## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

--------------------------------------------------------

WENCILIO ADEVA, individually and on behalf of all other persons similarly situated,

               Plaintiffs,

**v.**

INTERTEK USA INC. f/k/a CALEB BRETT USA INC. and INTERTEK CALEB BRETT, INC. a foreign corporation,

               Defendants.

--------------------------------------------------------

: HONORABLE STANLEY R. CHESLER
: CIVIL ACTION NO. 09-CV-01096-SRC-MAS
:
:
:           Civil Action
:
:
: **ORAL ARGUMENT REQUESTED**
:
:
:

---

## DEFENDANT'S BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

---

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**
10 Madison Avenue, Suite 402
Morristown, New Jersey 07930
(973) 656-1600
Attorneys for Defendant
Intertek USA Inc.

On the Brief:
      Peter O. Hughes

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES .................................................................. iii

INTRODUCTION ..............................................................................1

STATEMENT OF FACTS .....................................................................3

    A.    Intertek's FWW Pay Practice ...........................................................3

    B.    Intertek Acted Reasonably And In Good Faith In Implementing
    And Continuing Its FWW Practice ....................................................5

ARGUMENT ....................................................................................6

    POINT I                                   6

        INTERTEK'S PAYMENT OF OVERTIME THROUGH THE
        FLUCTUATING WORKWEEK METHOD IS PROPER .................................6

    POINT II .................................................................................32

        DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON
        LIQUIDATED DAMAGES ...........................................................32

    POINT III ................................................................................32

        INTERTEK'S ACTIONS WERE NOT "WILLFUL" AND THE
        2-YEAR STATUTE OF LIMITATIONS APPLIES .....................................33

CONCLUSION ...............................................................................35

# TABLE OF AUTHORITIES

**Cases**

Aiken v. County of Hampton,
   977 F.Supp. 390 (D.S.C. 1997) *aff'd* 172 F.3d 43 (4th Cir. 1998) ...............................1, 13, 15

Albanese v. Bergen County,
   991 F.Supp. 410 (D.N.J. 1997) ................................................................... 34

Andersen v. Mt. Clemens Pottery Co.,
   328 U.S. 680 (1946) ................................................................................ 8

Ayers v. SGS Control Services, Inc.,
   2007 WL 646326 (S.D.N.Y. February 27, 2007)......................................... *passim*

Bailey v. County of Georgetown,
   94 F.3d 152 (4th Cir. 1996)................................................................. 7, 11

Brock v. Claridge Hotel & Casino,
   664 F.Supp. 899 (D.N.J. 1986) .................................................................. 8

Brock v. Claridge Hotel & Casino,
   846 F.2d 180 (3d Cir. 1988)..................................................................... 24

Brock v. Richland Shoe Co.,
   799 F.2d 80, 81 (3d Cir. 1986).................................................................. 33

Bull v. U.S.,
   479 F.3d 1365 (Fed. Cir. 2007) ................................................................. 33

Burgess v. Catawba County,
   805 F.Supp. 341 (W.D.N.C. 1992)............................................................... 7

Cash v. Conn Appliances, Inc.,
   2 F.Supp.2d 884, 896 (E.D. Tex. 1997)...................................................... *passim*

Clements v. Serco, Inc.,
   530 F.3d 1224 (10th Cir. 2008)............................................................ 17, 22

Cross v. Arkansas Forestry Comm'n,
   938 F.2d 912 (8th Cir. 1991)................................................................... 25

Davis v. Friendly Express, Inc.,
   2003 WL 21488682, *3 (11th Cir. 2003) ...................................................... 8

Davis v. Mountaire Farms, Inc.,
    598 F.Supp.2d 582 (D. Del. 2009) ................................................... 34

Dooley v. Liberty Mutual Insurance Co.,
    369 F.Supp.2d 69 (D. Mass. 2005) ..........................................18, 21, 22

Flood v. New Hanover County,
    125 F.3d 249 (4th Cir. 1997) .......................................................... 8

Griffin v. Wake County,
    142 F.3d 712 (4th Cir. 1998) ......................................................... 23

Heder v. City of Two Rivers,
    295 F.3d 777 (7th Cir. 2002) ......................................................... 20

Harris v. District of Columbia,
    749 F. Supp. 301 (D.D.C. 1990) ..................................................... 25

Hoge v. Honda of Am. Mfg.,
    384 F.3d 238 (6th Cir. 2008) ......................................................... 25

Inniss v. Tandy Corporation,
    141 Wash.2d 517, 7 P.2d 807 (2000) .............................................. 17

Lance v. The Scotts Company,
    2005 WL 1785315 (N.D. Ill., July 21, 2005) ..................................... 16

Martin v. Selker Bros., Inc.,
    949 F.2d 1286 (3d Cir. 1991) ........................................................ 34

McLaughlin v. Richland Shoe Co,
    486 U.S. 128 (1985) ................................................................... 34

O'Brien v. Township of Agawam,
    350 F.3d 279 (1st Cir. 2003) ................................................... passim

Overnight Motor Transportation Co. v. Missel,
    316 U.S. 572 (1942) .......................................................... passim

Parisi v. Town of Salem,
    1997 WL 228509 (D.N.H. 1997) .................................................... 16

Parks v. Locating, Inc.,
    2002 WL 1352475 (9th Cir., 2002) ................................................. 21

<u>Perez v. Radio Shack Corp.</u>,
   2005 WL 3750320 (N.D. Ill. 2005) .................................................................... 17

<u>Perez v. Radio Shack</u>,
   2007 WL 3750320 ............................................................................................... 22

<u>Quirk v. Baltimore County</u>,
   895 F.Supp. 773 (D. Md. 1995) ......................................................................... 25

<u>Robinson v. Evergreen</u>,
   2008 WL 508083 (W.D. Okla. 2008) ................................................................ 21

<u>Samson v. Appollo Resources, Inc.</u>,
   242 F.3d 629 (5th Cir. 2001) ............................................................... 7, 8, 11

<u>Spring v. Washington Glass Co.</u>,
   153 F.Supp. 312 (W.D.Pa. 1957) ................................................................ *passim*

<u>Thomas v. County of Fairfax, Va.</u>,
   758 F. Supp. 353, 368 (E.D. Va. 1991) .............................................................. 25

<u>Woodard v. FedEx Freight East</u>,
   250 F.R.D. 178 (M.D.Pa. 2008) ......................................................................... 33

**OTHER AUTHORITIES**

29 C.F.R. §541.604 ................................................................................................. 15

29 C.F.R. §778.109 ................................................................................................... 9

29 C.F.R. §778.113 ................................................................................................... 9

29 C.F. R. §778.114 .......................................................................................... passim

29 C.F.R. §778.208 ............................................................................................... 4, 9

29 U.S.C. § 256 ....................................................................................................... 33

29 U.S.C. §207 ........................................................................................... 9, 14, 33

5 C.F.R. § 551.104 .................................................................................................. 33

C.F.R. §778.209 ........................................................................................................ 9

C.F.R. §779.408 ...................................................................................................... 14

DOL Wage & Hour Opinion Letter, March 13, 1995 ................................................................ 15

DOL Wage & Hour Opinion Letter, May 10, 1999 ................................................................ 12

DOL Wage & Hour Opinion Letter, August 19, 2005 ............................................................ 15

**INTRODUCTION**

Defendant Intertek USA, Inc. ("Intertek") respectfully submits this Brief in opposition to Plaintiff's Motion for Summary Judgment and in support of Defendant's Cross-Motion for Summary Judgment.  Plaintiff seeks to ignore the express agreements between the employees and Intertek that they would be paid on a Fluctuating Workweek ("FWW") basis, and seeks to do so solely because in addition to their fixed salaries and overtime pay, some of the Inspectors sometimes received extra bonuses and premiums depending on where and when they worked.  Stated differently, because Plaintiff sometimes received extra payments, he seeks to invalidate completely the agreed-upon pay structure in order to receive even more pay now.

As demonstrated below, Intertek's FWW fully complies with the Fair Labor Standards Act ("FLSA"), and all guidance published by the United States Department of Labor ("DOL").  Plaintiff's bald assertion that "case law has uniformly determined that Defendants' (sic) pay practice at issue violates the FLSA," is somewhat mystifying. Indeed, one of the very cases cited by *Plaintiff* in his Brief – <u>Aiken v. County of Hampton</u>, 977 F.Supp. 390 (D.S.C. 1997) *aff'd* 172 F.3d 43 (4th Cir. 1998) – expressly *rejected* his argument that payment of premiums for work on a holiday is improper under FWW.  As detailed below, substantial additional legal authority confirms that payment of premiums and bonuses is entirely consistent with, and permissible under, the FWW, including official pronouncements of the DOL and several judicial decisions.  These authorities compel the entry of summary judgment in favor of Intertek, dismissing the Complaint.

Plaintiff's Brief chooses to ignore those authorities and instead relies on Ayers v. SGS, 2007 WL 646326 (S.D.N.Y. February 27, 2007), which misreads DOL interpretive guidance to prohibit use of the FWW when an employer pays premiums and bonuses in addition to a regular fixed salary.  Ayers, however, is contrary to the weight of authority on this issue, which it fails even to cite, much less distinguish. Instead, it relies on cases which did not involve FWW plans at all.  The reasoning of Ayers, moreover, is fatally flawed.  Neither Ayers nor Plaintiff can answer this  fundamental question:  Why would the DOL possibly want to prevent employers from paying bonuses to their employees? If Plaintiff's argument were correct, then employers could bring themselves into compliance simply by eliminating the payment of bonuses and premiums to their employees. This result would be no benefit to the employees, and it would be directly contrary to the DOL's stated position that benefits and premiums are beneficial for employees, and are to be encouraged.

The DOL has explicitly stated that bonuses and premiums are consistent with payment of wages on a "salary basis," and its regulations and interpretive guidance are explicit in requiring that such enhanced payments be included in the calculation of overtime compensation. The DOL's primary concern in the FWW context is that the employee is paid on a "salary basis" so that the base pay does not vary according to the number of hours he or she works. This is because such fluctuation would demonstrate that the employee is not in fact paid a salary, but is being paid by the hour.

It is indisputable that Intertek pays its Inspectors a fixed salary, regardless of the number of hours the Inspectors work, whether few or many. If the Inspector works fewer than 40 hours in the week, no deductions from pay are made.  The premiums and bonuses

2

of which Plaintiff complains are not a function of the number of hours the employee works.  Instead, the premiums are lump sums earned based upon *when* the Inspector works (in the case of holiday and day-off pay) or *where* the Inspector works (in the case of "off-shore" pay).  Thus, this is not a situation where the payments are pseudo bonuses or other mechanisms to avoid paying overtime. In fact, as Plaintiff concedes, when bonuses or premiums are paid, they are included in calculating Plaintiff's regular rate of pay, thereby increasing the overtime pay.  Nor do the payments have the design or effect of converting salaried employees into hourly employees. In sum, the premiums and bonuses are consistent with payment of wages on a salary basis, are consistent with the Inspectors non-exempt status, and are lawful and appropriate under FWW.

Intertek is entitled to summary judgment, dismissing the Complaint.

## STATEMENT OF FACTS

### A.      Intertek's FWW Pay Practice

The Inspectors are non-exempt employees, and Intertek pays them in accordance with the FWW.  The Inspectors are paid a fixed salary each week, which compensates them on a straight time basis for *all* of the hours that they work in any week, regardless of how many they work. (Exhibits E and G to Plaintiff's Motion).  Even if the employee works fewer than 40 hours, he receives the same salary; no reductions for missed days are ever made. (Vanbenschoten Dep., 93). The Inspectors are also entitled to, and are paid overtime for each hour they work in excess of 40 each week. Overtime is determined by first calculating the employee's "regular hourly rate" for a given week (arrived at by dividing the weekly salary plus bonus/premium compensation, if applicable, by the total number of hours worked by the employee during the week, including both "regular" and

"overtime" hours), and then paying as overtime an additional one-half of the regular rate for each hour worked that week over 40. This is expressly permitted by the DOL. 29 C.F.R. §778.114 ("§778.114").

In addition to salary, Intertek also makes certain other premium payments available to Inspectors. For example, Inspectors are eligible to receive "Day Off Pay" (a lump sum payment, usually $50.00 or $100.00 per day, depending on location) if they are called into work on a day they otherwise are scheduled to be off from work. (Vanbenschoten Dep., 78). Similarly, some Inspectors may get "off shore pay," sometimes also referred to as "anchorage pay" when they go out into the navigable waters to board a ship to inspect product. This is a lump sum payment (in New Jersey, it is $75.00) for each job. (Vanbenschoten Dep., 77). And Inspectors may receive "Holiday Pay" which is a lump sum payment for work performed on a holiday. (*Id.*). When earned, all of these premiums are added into the calculation of the overtime rate in accordance with the requirements of the FLSA. 29 C.F.R. §778.208.

Not all Inspectors earn, or even have the opportunity to earn, offshore pay. (Declaration of Q Vanbenschoten at ¶8. Plaintiff Adeva testified that in the New York Harbor facility, where he works, only 5 out of a total of 40 inspectors are eligible to even offshore pay. (Adeva Dep. 85-87). Similarly, there are a number of Inspectors who never have earned "day off" or holiday pay. (*Id*). Thus, even if Plaintiff's argument were accepted, employees who actually received no premium, or *de minimis* amounts of premium, are properly compensated under Intertek's FWW.

The FWW policy is clearly communicated to the Inspectors in multiple ways. It is set forth in the employee handbook. (Exhibit E to Plaintiff's Motion). Each Inspector

signs an Acknowledgement, which describes how the overtime is paid, including providing specific examples.  (See, Exhibit G to Plaintiff's Motion).  FWW also is required by the collective bargaining agreements between Intertek and the unions representing its Inspectors in New York Harbor (Carteret, NJ) and New Haven, CT. which are the only unionized Inspectors. (Vanbenschoten Dep., 26-27).  It is undisputed that Intertek complies with the FWW procedure described in these documents.  (Adeva Dep., 73-74).

**B.     Intertek Acted Reasonably And In Good Faith In Implementing And Continuing Its FWW Practice**

Intertek's FWW practice has been in effect for over 25 years.  (Adeva Dep., 75; Vanbenschoten Decl. ¶2).  It was designed to comply with the requirements of §778.114. Over the years, Intertek has reviewed its practice to ensure continued compliance.  When Intertek determined that FWW was not permitted at all under the wage laws of some states – regardless of payment or non-payment of bonuses – it eliminated the FWW in those states. (Vanbenschoten Dep., 19).  Intertek's Human Resources management has stayed abreast of developments in labor and employment law, including attending seminars, taking classes, and reviewing legal publications. (Vanbenschoten Dep., 14-15). Intertek also has consulted with experienced counsel regarding its payroll practices,  and specifically had its FWW practice reviewed.   (Vanbenschoten Decl. ¶2).   Intertek's payroll practices were audited by the New Jersey Department of Labor and Workforce Development in 2005, which cited no violation of the overtime requirements. (Vanbenschoten Decl. at ¶4).  At no time until the Ayers case, did the information sources available to Intertek by these means challenge the propriety of using the FWW to

pay salaried employees simply because those employees, in addition to their salary, sometimes were also eligible for premiums or bonuses.

In 2007, Intertek learned of the <u>Ayers</u> decision, which involved one of its competitors. In response, Intertek consulted with counsel regarding its continued use of the FWW.  Being advised that the pay practices in <u>Ayers</u> were distinguishable in several respects, and that <u>Ayers</u>'s ruling on the payment of bonuses and premiums did not appear to be correct and was inconsistent with other law, Intertek continued its FWW practice. (Vanbenschoten Decl. at ¶7).

In July, 2008 the DOL issued proposed revisions to a number of its interpretations of the overtime requirements of the FLSA.  Among the sections addressed was §778.114, the FWW section.   The DOL's proposed revision expressly permits the payment of bonuses and premiums under FWW. (Hughes Decl., Exhibit G).   In the DOL's comments, it stated that the proposed revision merely "clarified" the existing rule, did not represent a change in the law, and that it was consistent with Supreme Court precedent. Though the proposed revisions have not yet been formally adopted, they did lead Intertek to reasonably conclude that its FWW practice was lawful and consistent with the DOL's own interpretation, so it continued the practice.   (Vanbenschoten Dep. 103-4; Vanbenschoten Decl. at ¶6).

## <u>ARGUMENT</u>

### POINT I

### <u>INTERTEK'S PAYMENT OF OVERTIME THROUGH THE FLUCTUATING WORKWEEK METHOD IS PROPER</u>

Intertek has at all times properly compensated its Inspectors, and has paid them all overtime to which they are entitled. In doing so, Intertek has complied with the FLSA. Plaintiff's attack on the FWW, based solely on Intertek's *enhancement* of the Inspectors' pay, simply is not supported by the FLSA, the DOL's interpretations of the FLSA, or applicable law.  Plaintiff's attack also simply defies common sense.  As demonstrated below, Intertek's FWW complies with both the spirit and the letter of the law. (Vanbenschoten Decl. at ¶7).

A.     **FWW is Not an Exception or Exemption From the FLSA**

Most of Plaintiff's argument proceeds from a fundamentally faulty premise, based upon his misreading of a court decision that holds precisely the opposite of what Plaintiff contends it says.  Specifically, Plaintiff contends that FWW is an "exception" to the FLSA's overtime rules, and cites <u>Bailey v. County of Georgetown</u>, 94 F.3d 152 (4th Cir. 1996). In reality, Plaintiff could not have chosen a worse case to cite. The court in <u>Bailey</u> held that FWW is *not* an exception to the FLSA. Specifically, the court wrote:

> The [appellants] believe that section 778.114 represents an exception to the FLSA, rather than an elaboration upon it. . . . Appellants are mistaken. As we have indicated, section 778.114 simply provides one means by which a salaried employee's regular rate of pay may be determined.

94 F.3d at 154, n. 5 (citations omitted). The court expressly rejected one of the other decisions Plaintiff cites, <u>Burgess v. Catawba County</u>, 805 F.Supp. 341 (W.D.N.C. 1992). *Id.*   Other decisions are in accord. "As its name implies, the FWW method is one method of complying with the overtime payment requirements of 29 U.S.C. 207(a)(1).  *It is not an exemption to it.*"   <u>Samson v. Appollo Resources, Inc.</u>, 242 F.3d 629 (5th Cir. 2001)(emphasis added).   FWW "merely provides an alternative means by which an

employer can determine its employees' regular and overtime rates of pay." <u>Flood v. New Hanover County</u>, 125 F.3d 249 (4th Cir. 1997).

Moreover, because FWW is not an exception, no rules about it being narrowly construed against the employer apply. Thus, Plaintiff bears the burden of proving that Intertek has not complied with the FWW. <u>Samson</u>, 242 F.3d at 636; <u>Davis v. Friendly Express, Inc.</u>, 2003 WL 21488682, *3 (11th Cir. 2003); <u>Cash v. Conn Appliances, Inc.</u>, 2 F.Supp.2d 884, 896 (E.D. Tex. 1997)("The employee alleging improper application of the fluctuating workweek method bears the burden of proof"). This is in accord with the general rule under the FLSA that the Plaintiff has the "burden of showing that he performed work for which he was not properly compensated." <u>Andersen v. Mt. Clemens Pottery Co.</u>, 328 U.S. 680, 686-87 (1946); <u>Brock v. Claridge Hotel & Casino</u>, 664 F.Supp. 899, 906 (D.N.J. 1986).

Since FWW is merely an alternative means of calculating overtime, rather than an exception, it is worthwhile to review the FLSA's overtime requirements and FWW's place in it.

## C. The FLSA's Overtime Requirement

### 1. The "Regular Rate"

The FLSA requires that a non-exempt employee receive overtime pay at an hourly rate that is "not less than one and one-half times the *regular rate* at which he is employed." 29 U.S..207(a) (emphasis added).

Since the FLSA itself does not define the term "regular rate," it has been left to the DOL to do so. Importantly, the FLSA does not require employers pay non-exempt employees by the hour, and when they are paid on a salary basis, their hourly "regular

rate" is arrived at by dividing their weekly pay by the total number of hours they worked in a week.  Thus the DOL's regulation specifies:

> The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek . . . .  The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which sum compensation was paid.

29 C.F.R. §778.109. (emphasis added)

Where, as here, the employees are compensated on a salary basis, the FLSA requires that the "regular rate" be calculated by dividing the employee's compensation by the number of hours the employee has worked during the week. 29 C.F.R. §778.113 (salaried employee's "regular hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary by the number of hours which the salary is intended to compensate").

### 2.       Premium, Bonuses and the Regular Rate

With limited exceptions, the FLSA requires that all remuneration be included within the calculation of the regular rate.  29 U.S.C. §207(e); 29 C.F.R. §778.109. This includes bonuses and premium pay. "Bonuses . . . must be totaled in with other earnings to determine the regular rate on which overtime pay must be based." 29 C.F.R. §778.208. Where, as here, the bonus is for work performed in a discrete week, "[t]he amount of the bonus is merely added to the other earnings of the employee (except statutory exclusions) and the total divided by total hours worked." 29 C.F.R. §778.209(a).

Failure to include bonuses in the calculation of overtime is itself a violation of the FLSA, including where the employer pays by FWW. Cash v. Conn Appliances, Inc., 2 F.Supp.2d at 893 (employer's failure to include employees' bonuses in calculation of overtime under FWW violated FWW).  Consequently, Intertek is *required* to add any "day off pay" and/or "anchorage pay" its Inspectors earn to their salary for the week in determining their "regular rate," and it does so.

### C.   The Fluctuating Workweek Method of Calculating Overtime

The FWW, which is one method of calculating the regular rate and overtime for salaried employees, was first recognized by the Supreme Court in Overnight Motor Transp. v. Missel, 316 U.S. 562 (1942).  In that case, the Court was faced with an overtime regime in which the employer paid the employee a fixed salary every week, regardless of the number of hours the employee worked; no extra compensation was paid for overtime hours. The employer sought to justify his policy by noting that the salary was set sufficiently high to encompass anticipated overtime hours, and that the salary, divided by the number of hours worked, was always sufficient to ensure the employee received at least one-and-one-half times the *minimum wage*. 316 U.S. at 574.  The Court rejected this, finding that the FLSA requires one-and-one-half times the *regular rate*, not times the *minimum wage*. *Id.* at 578.

The Court went on to state that the "regular rate" is a function of the actual rate of pay determined by how the parties operated in fact.  Where, as in the case before it, the employee was paid a salary which was understood to cover whatever number of hours the employee worked in the week, the regular rate is determined by dividing the salary by the number of hours the employee actually worked. *Id.* at 580.  This is permissible even

though the regular rate fluctuates from week to week, because the salary remains constant within each week. *Id.* The Court noted, however, that the FLSA requires time-and-one-half for overtime, even when an employee is paid by salary. This could be accomplished by paying the employee one-half of the regular rate for each overtime hour he worked. This was appropriate because the straight time component of the overtime hour (i.e., the "one" of "one-and-a-half") had already been paid for by the salary. The FWW was born. The DOL later codified the Overnight Motor in its interpretive bulletin as §778.114.[1]

**D.      Bonuses, Premiums, and the Fluctuating Workweek**

Nothing in Overnight Motor says, or even suggests, that bonuses or premiums could not be paid under such an overtime procedure. Since the employer in Overnight Motor did not pay bonuses, the Court simply was not called upon to address the issue. However, it certainly did not foreclose payment of such enhancements to salary. Nothing in the case even implies that salary must be the exclusive form of payment under FWW.

Again, FWW is not an exception to the overtime rules, but merely an alternate way of calculating it for salaried employees. Bailey, 94 F.3d at 154; Samson, 242 F.3d 269. Consequently, there is no reason why the normal rules generally applicable to non-exempt employees – which permit payment of bonuses and premiums to non-exempt employees, and require inclusion of such payments in calculating the regular rate – should not apply and, as detailed below, numerous courts have held that bonuses, premiums, commissions, etc., are proper and must be included in the overtime calculation

---

[1]      Though the case law sometimes refers to §778.114 as a "regulation" of the DOL, it is not. Part 778 is merely the DOL's "official interpretation . . . with respect to the meaning and application of the maximum hours and overtime pay requirements set forth in Section 7 of the Act." 29 C.F.R. 778.1. Consequently, it is not entitled to Chevron deference as a formal regulation.

under FWW. *See, e.g.,* <u>Cash v. Conn Appliances</u>, 2 F.Supp.2d at 893 (employer was required to include bonuses in calculation of overtime under FWW). In <u>Spring v. Washington Glass Co.</u>, 153 F.Supp. 312 (W.D.Pa. 1957), for example, the employee had been misclassified as an exempt supervisor, and was entitled to overtime. The court held that the overtime compensation should be calculated pursuant to the FWW, and expressly held that weekly production bonuses the employee had earned over the years had to be included in the calculation of the regular rate under the FWW. 153 F.Supp. at 318.

### 1.    The DOL Takes the Position That Premiums and Bonuses are Proper Under FWW

Nothing in the DOL's interpretive bulletin, §778.114, states that bonuses or premiums cannot be paid in an FWW pay plan. To the contrary, the section states in relevant part:

> Where all legal prerequisites for use of the 'fluctuating workweek' method of overtime payment are present, the Act, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, <u>does not prohibit paying more</u>.

§778.114 (emphasis added).   There is nothing in the FLSA, nor in any regulation, interpretive bulletin, or opinion letter that prohibits payment of bonuses or premiums under FWW.

The only pronouncements DOL has ever made on the issue, in fact, support the proposition that extra payments such as bonuses are permissible. In the DOL Wage & Hour Opinion Letter, May 10, 1999 the employer inquired whether, under FWW, it could provide extra payment to an employees who were asked to work on scheduled holidays. Specifically, the employee received his regular, full salary for the week, and also received extra pay for having to work the holiday.  In response, the DOL stated: "Where all the

legal prerequisites for the use of the fluctuating workweek method of overtime payment are present, the FLSA, in requiring that 'not less than' the prescribed premium of 50 percent for overtime hours worked be paid, does not prohibit paying more." *Id.*

This is consistent with the ruling in <u>Aiken v. County of Hampton</u>, *supra.*, where the court *rejected* the plaintiffs' argument that the County could not use FWW because it paid employees premium pay when they worked on holidays. 977 F.Supp. at 397. The County paid employees additional wages, over and above the normal salary, when they worked holidays, and included this holiday pay in the calculation of their overtime. 977 F.Supp. at 399.  The employees received 8 hours pay when they worked a holiday.  The court held that this was lawful and proper under the FWW. "Because Plaintiffs receive, during each pay period, a predetermined amount constituting all or part of their compensation, they are salaried employees under the provisions of the FLSA." *Id.*

Thus, the employer's practice in <u>Aiken</u> – a case which Plaintiff relies upon in his own Brief – is exactly on point with Intertek's practice of compensating employees who are asked to work on  holidays and/or on their scheduled days off.  The payment has no effect on their salaries.  It is an extra, enhanced payment to make up for the hardship of having to work on what was supposed to be a rest day.  Thus, such payments are perfectly legal under FWW.

**2.     Where the DOL Intends that Bonuses and Premiums Cannot Be Paid Under Other Overtime Plans, It has Expressly said So**

The silence in §778.114 about payment of bonuses and premiums is especially telling because, where the DOL's rule under other overtime schemes is that bonuses cannot be paid, it has expressly said so in clear, unambiguous terms. Specifically, in the

13

DOL's guidance on so-called *Belo* plans, the DOL has expressly stated that bonuses and commissions cannot be paid.  Under a *Belo* plan, an overtime plan specifically permitted by 29 U.S.C. §207(f), an employee whose hours fluctuate both above and below 40 hours from week to week can be paid a fixed, guaranteed sum each week as his total compensation (*including* all overtime premiums) regardless of the number of hours he works, up to an agreed-upon maximum number of hours in any particular week. *Id.*[2] For a pay arrangement to meet the *Belo* requirements, there must be an express contract between employer and employee that "specifies the regular rate of pay." 29 U.S.C. §207(f)(1). Unlike FWW, under a *Belo* plan, the "regular rate" does not vary from week to week based on number of hours worked, but is fixed by the parties' agreement.

For this reason, the DOL has expressly held that regular bonuses and commissions are not payable to employees who work pursuant to *Belo* contracts. 29 C.F.R. §779.408(c). This is due to the general rule that bonuses and commissions must be included in the "regular rate" for overtime purposes. Since commissions and bonuses by their very nature vary from week to week, it would be impossible to provide a "guaranteed" total compensation each week at a "specified regular rate" To an employee who received such payments. *Id.*

The *Belo* regulations demonstrate clearly that, where the DOL intended that employers not be permitted to pay bonuses or commissions, it has expressly said so. Therefore, the DOL's complete silence on the issue of bonuses, commission, and

---

[2]     These are referred to as "*Belo*" plans because they were first recognized by the Supreme Court in <u>Walling v. A.H. Belo Co.</u>, 316 U.S. 624 (1942).  Section (f) of 29 U.S.C. §207 was in fact enacted to codify the Court's ruling in <u>Belo</u>.  Unlike FWW, *Belo* plans are specifically denominated by DOL as an "exemption from the overtime provisions of the [FLSA]." 29 C.F.R. §778.403.

premiums in §778.114, speaks volumes. If payment of bonuses would vitiate the use of FWW, surely the DOL would have expressly said so in clear, unambiguous terms, as it did when it wrote the *Belo* regulations. The inevitable conclusion is that the DOL does not, and never has, considered premiums above and beyond salary to be inconsistent with, or prohibited under, FWW.

### 3. Payment of Premiums and Bonuses Under FWW is Consistent With the DOL's "Salary Basis" Test

This also is consistent with the DOL's treatment of the "salary basis" test for purposes of determining whether an employee is "exempt" from overtime requirements of the FLSA. "An employer may provide an exempt employee with additional compensation without losing the exemption or violating the salary basis arrangement. . .." 29 C.F.R. §541.604(a). *See also*, *DOL Opinion Letter, August 19, 2005*, (FLSA 2005-20) (employer is permitted to pay shift differential premium to employee without losing exemption); *DOL Opinion Letter, March 3, 1995* (payment of weekly bonuses based upon percentage of revenues is consistent with salary basis).

### 4. Payment of Premiums and Bonuses Under FWW is Supported By Substantial Case Law

A number of courts also have held that payment of bonuses, commissions, premiums, and other extras is lawful and proper under FWW. As noted above, Aiken v. County of Hampton, a case relied upon by Plaintiff in his own Brief, expressly held that the employer could lawfully pay holiday premiums in addition to salary under the FWW. 977 F.Supp. at 397, 399.

In Cash v. Conn Appliances, Inc., non-exempt employees contended that their employer, which paid overtime via FWW, had failed to pay them all overtime due. The

employees claimed that the employer had violated FWW through several practices, one of which was that the employer had *not* included bonuses and other incentive payments in the calculation of the "regular rate." 2 F.Supp.2d at 903.  The court held that employers using the FWW are *required* to include bonuses and other incentives in calculating the regular rate: "When the employee receives certain types of bonuses, including awards promised in return for outstanding productivity, determination of the regular rate involves dividing the sum of the salary and those bonuses by the total number of hours worked in the week." 2 F.Supp.2d at 893, n. 17, *citing,* §778.114 and <u>Parisi v. Town of Salem</u>, 1997 WL 228509 (D.N.H. 1997).  The court noted that the DOL has created a "Coefficient Table" for use in calculating the overtime due under the FWW method, and the Table is designed to make "figuring overtime compensation due the employee who earns both salary and bonuses in a week easy." *Id.* at n. 18.[3]  Finally, the court noted that, as in the case before it, "[c]omputational errors in the fluctuating workweek context include neglecting to add bonuses to salary before adducing the regular rate." 2 F.Supp.2d at 896, n. 27.  The employer in <u>Cash</u> conceded that it had erred in failing to include bonuses and incentive pay in the FWW calculation and went back and paid the employees the amounts due. 2 F.Supp.2d at 902.

The court in <u>Lance v. The Scotts Company</u>, 2005 WL 1785315 (N.D. Ill., July 21, 2005) reached the same conclusion. The plaintiff there argued that FWW was improper because the employer added the employee's commissions to the salary to calculate the regular rate. The court rejected this argument, holding that "Defendant's method of

---

[3]     A copy of the DOL's Coefficient Table is attached to the Hughes Cert. as Exhibit A.  As suggested by <u>Cash</u>, the DOL's creation of such a table demonstrates the DOL's position that premiums, bonuses, and commissions are proper under FWW.

calculating overtime pay is specifically contemplated and authorized by the DOL." 2005 WL 1785315, *6-7.

Another case in which a court expressly approved the inclusion of bonuses and incentive payments in FWW calculation was Inniss v. Tandy Corporation, 141 Wash.2d 517, 7 P.2d 807 (2000). While the case was decided under Washington state law, the Washington Supreme Court stated that it was construing the state law in accordance with the federal FLSA. 141 Wash.2d at 524-25. In the Inniss case, the FWW employees were paid commissions and bonuses in addition to their base salaries. The Court held that this was permissible and that FWW was proper. In fact, it noted that the commissions and bonuses kept the employees' regular rate above the minimum wage rate, so as to allow the FWW to be used. Id. at 533.

Finally, courts have applied the FWW method retroactively to calculate the back overtime pay due to employees who had been misclassified as "exempt," and have held that inclusion of bonuses, commissions and similar payments not only is permissible but legally required. In Clements v. Serco, Inc., 530 F.3d 1224 (10th Cir. 2008), the court dealt with the compensation due to employees who had been misclassified as "outside salespersons." The Tenth Circuit affirmed the lower court's ruling that the amount of overtime due to the employees would be calculated by FWW, because the employees had understood that they were to be paid the same salary no matter how many hours they worked each week, even though they also earned sales commissions. 530 F.3d at 1230-31. Similarly, the court in Perez v. Radio Shack Corp., 2005 WL 3750320 (N.D. Ill. 2005), held that bonuses had to be included in an FWW calculation performed to determine the overtime due to employees who had been misclassified as exempt. Nor are

these decisions recent phenomena, as demonstrated by <u>Spring v. Washington Glass Co.</u>, 153 F.Supp. 312, discussed above.

### E.      Plaintiff's Contrary Authority is Not Binding and is Simply Wrong

The primary authority plaintiff cites for his proposition that payment of premiums vitiates FWW is <u>Ayers v. SGS Control Services, Inc.</u>, 2007 WL 646326 (S.D.N.Y. February 27, 2007).   The judge in <u>Ayers</u> held that defendant SGS – which is one of Intertek's competitors – was improperly paying FWW. SGS' practices for paying FWW were different in several significant ways from the way Intertek pays its Inspectors, and the court cited a number of them as bases to invalidate the FWW.   However, the court also cited the fact that SGS paid lump sum premiums in addition to salary, specifically for "sea pay" and "day-off pay" (but only sea pay was included in calculating the regular rate, <u>Id.</u> at * 3).   It held that, because payment of these premiums made employees' base rate vary from week to week, employees were not paid a "fixed salary" and so FWW could not be used.   As authority for this, the <u>Ayers</u> court cited <u>O'Brien v. Township of Agawam</u>, 350 F.3d 279 (1st Cir. 2003) and <u>Dooley v. Liberty Mutual Insurance Co.</u>, 369 F.Supp.2d 69 (D. Mass. 2005).   These cases do not support the conclusion that FWW prohibits payment of premiums or extras, and <u>Ayers</u> incorrectly relied on them.

Interestingly, the employers in <u>O'Brien</u> and <u>Dooley</u> never claimed that they were paying employees pursuant to the FWW method until *after* they had been sued. <u>O'Brien</u>, 350 F.3d at 289-90.[4]   In <u>O'Brien</u> the plaintiffs were police officers who sued their

---

[4]    Indeed, Judge Berman in the <u>SGS</u> case specifically noted that <u>O'Brien</u> and <u>Dooley</u> "are distinguishable to the extent that they involve employers' 'after the fact' attempts to avoid liability for overtime violations by retroactively characterizing their payroll methods as "fluctuating work week." <u>Ayers v. SGS Control Services, Inc.</u>, 2007 WL 3171342, *3 (S.D.N.Y. October 9, 2007)

municipal employer because it had not included certain premium payments such as longevity pay and shift-differential pay in their overtime calculations. *There was not, and never had been, any agreement between the police officers and the employer for payment of overtime via FWW.*  In fact, in complete contradiction to the FWW, the collective bargaining agreement between the police officers and the town expressly provided that the officers were entitled to time-and-a-half for overtime hours actually worked. 350 F.3d at 282-83.  When calculating overtime, the employer simply divided the employee's base annual salary by 1950 – the number of base hours each police office was *expected* to work each year – and then paid one-and-a-half times that rate for each hour the police office worked in excess of 40 in a week (and excluded the extra payments).  The employer's overtime scheme had absolutely nothing in common with an FWW program as the <u>Ayers</u> opinion acknowledged.  2007 WL 646346, *12.

Nevertheless, the employer in <u>O'Brien</u> somehow convinced the lower court that its overtime scheme was proper because it had paid the officers more than they would have been entitled to under an FWW plan.  Not surprisingly, the appeals court reversed on several grounds. It found that FWW could not apply because the officers straight time in fact varied with the number of hours they worked each week, because they received extra pay *for each hour* worked in excess of eight in a day and *for each hou*r worked during what otherwise would have been off-duty time. 350 F.3d at 289.  The court also found that there was no clear mutual understanding that overtime would be paid according to FWW. *Id.* at 290. In fact, the written agreement said precisely the opposite. All of this was sufficient to nullify any argument that the plan complied with FWW.

However, the court for some reason also stated that FWW also was inapplicable because the officers received certain augments, specifically a shift differential of $10 per shift, regardless of the number of hours worked.  350 F.3d at  289-90. The Court stated, "it is not enough that the officers receive a fixed *minimum* sum each week; rather, to comply with the regulation, the Town must pay each officer a 'fixed amount as straight time pay for whatever hours he is called upon to work in a workweek, *whether few or many.'" Id.* (quoting §778.114(a)). The court cited no other authority for this proposition, other than this phrase plucked from §778.114.  The court did not even cite, much less seek to explain, the multiple contrary authorities cited above. In the absence of any discussion of them, it seems clear they were never brought to the court's attention.

As discussed above, §778.114 simply will not bear the court's interpretation.  The full language of §778.114 makes clear that the critical element of the FWW arrangement is that the employee receives his or her salary regardless of the <u>number</u> of hours worked:

> Where there is a clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each work week, whatever their number, rather than for working 40 hours or some other fixed weekly work period . . . . .

§778.114(a).  That is, the critical concern of the DOL was that the employee's base compensation would not change due to variations in the *number of hours* the employee works in the week, because that would be inconsistent with being paid on a salary basis and would show, instead, that the employee is being paid by the hour.

Thus, most of the cases Plaintiff cites nullifying FWW practices involved situations where either the employer was making improper deductions from salary when the employees worked fewer then 40 hours, or where the employees understood the salary covered only 40 hours per week, rather than all hours worked.  *See, e.g.,* <u>Heder v.</u>

City of Two Rivers, 295 F.3d 777 (7th Cir. 2002) (FWW improper because pay docked);

Parks v. Locating, Inc., 2002 WL 1352475 (9th Cir., 2002) (employer paid straight hourly

wage with guaranteed minimum of 40 hours; did not pay salary for all hours worked);

Robinson v. Evergreen, 2008 WL 508083 (W.D. Okla. 2008) (employees believed salary

covered only first 40 hours).

There is nothing in §778.114 indicating that the DOL had any concern that

employees' receipt of *additional* pay would be a problem.  On the contrary, §778.114 is

explicit that the DOL approves of additional payments:

> Where all legal prerequisites for use of the "fluctuating work week"
> method are present, this Act, in requiring that "not less than" the
> prescribed premium of 50% for overtime hours be paid does not prohibit
> paying more.

§778.114(c) (emphasis added).  Again, the court in O'Brien either was unaware of, or

simply ignored, the multiple legal authorities cited above holding contrary to its position.

It therefore cannot be given any substantial deference as authority on the limited issue in

the case at bar.

Ayers' reliance on Dooley likewise was misplaced. There, the employer had

misclassified the employees as "exempt" from the FLSA, so there had never been an

agreement to pay the employees overtime according to the FWW, or any other method

for that matter.  The employees sued, claiming they had been improperly classified.

During the course of the litigation, the employer conceded that the employees in fact had

been improperly classified as exempt and were entitled to overtime. However, the

employer argued that the back overtime should be calculated pursuant to the FWW

method, and the court initially agreed. Dooley, 307 F.Supp.2d 234, 252 (D. Mass. 2004).

However, nearly two years later, the same court revisited the issue and held that FWW could not be used to calculate the back pay because the methods used by the employer to compensate the employees for Saturday work prohibited retroactive application of FWW. The employer had used two different methods. At one point in time, it had paid the employees a lump sum when they worked on Saturdays. In March of 2003 – while the lawsuit was pending – it had changed this and instead paid a premium hourly rate for Saturday work. The court found that this precluded use of the FWW. In doing so, the court found itself bound to follow O'Brien, which was a decision from its Circuit Court of Appeals.

Dooley is contrary to the decisions from other courts which have held that calculation of backpay overtime to misclassified employees is appropriate under FWW even where bonuses and commissions must be included in the calculation. *See, e.g.,* Clements v. Serco, Inc., 530 F.3d 1230-31; Perez v. Radio Shack, 2007 WL 3750320; Spring v. Washington Glass, 153 F.Supp. at 318. Tellingly, no court besides Ayers has ever cited Dooley favorably.

There is no logic or support for the courts' decisions in O'Brien, Dooley, or Ayers. There is no sound reason why Congress or the DOL would want to dissuade employers from offering bonuses or premium payments in connection with FWW, so long as those bonuses or premiums are not tied to the *number* of hours the employee works, particularly where such premium payments, like here, increase the overtime rate. If Plaintiff's argument were correct, the obvious solution is for the FWW employer to

simply cut out premiums altogether and pay the employees less money. What possible benefit could that be to employees?  The answer is obvious: none.[5]

### F.      Clear, Mutual Understanding

Finally, Plaintiff argues that he did not have a "clear mutual understanding" required for FWW because, due to his receipt of premiums and bonuses, his weekly base pay was not "fixed."  It should be sufficient to note that even <u>Ayers v. SGS</u> – the opinion upon which Plaintiff's entire case is constructed – rejected this same argument out of hand, noting that "Plaintiffs' theory would require the Court to hold that no employee could have had a 'clear understanding' of Defendants' fluctuating workweek program as long as the program violated any aspect of the FLSA's fluctuating workweek regulations" 2007 WL 646326, *12.  Rejecting this, the <u>Ayers</u> court held:  "By contrast, it appears that SGS's employees knew ('understood') that they were paid under the fluctuating workweek method.  (See Employee Handbook at 10)."  *(Id.).*  This is in accord with other courts' treatment of the "clear mutual understanding" requirement.  *See, e.g.,* <u>Griffin v. Wake County</u>, 142 F.3d 712, 717 (4th Cir. 1998) ("It is enough, as here, that the employer 'provided its employees with a reasonably clear and accurate explanation of their compensation,' … and paid its employees according to that system of compensation." (citations omitted).

Intertek's payment of premiums, and its calculation of them into the regular rate, is entirely proper under the FWW and the Inspectors understood from multiple documents what the policy was.  Its overtime practice fully complies with both the letter

---

[5]      The only possible beneficiaries of such a rule would be litigants and their attorneys who, as here, seek to assert it as some sort of *ex post facto* "gotcha" to try to obtain a windfall, even though they have been paid everything to which they are entitled.

and the spirit of the FLSA.  There are no genuine issues of material fact, and Intertek is

entitled to judgment as a matter of law, dismissing the Complaint.

### POINT II
### DEFENDANT IS ENTITLED TO SUMMARY
### JUDGMENT ON LIQUIDATED DAMAGES

Even if the court were to find that Intertek violated the FWW, Intertek acted in

good faith and with an objectively reasonable belief that its payment of bonuses in

addition to salary was lawful and proper under FWW.   Contrary to Plaintiff's

misrepresentation of the facts,[6] Intertek did indeed act in good faith to ascertain its

obligations under the law, and acted reasonably to comply with the law. As noted above,

Intertek still believes its practice is lawful, and the substantial weight of legal authority

supports its position.   Intertek's Human Resources personnel stayed abreast of

developments in FLSA law, and consulted with experienced labor and employment

attorneys. Intertek is entitled to summary judgment.

An employer will not be liable for liquidated damages if its actions were "in good

faith and  . . . [it] had reasonable grounds for believing that its act or omission was not a

violation" of the FLSA. 29 U.S.C. §260. Good faith is a subjective requirement, shown if

the employer had an honest intention to ascertain and follow the dictates of the FLSA.

Brock v. Claridge Hotel & Casino, 846 F.2d 180, 187 (3d Cir. 1988).  Reasonableness is

an objective test. *Id*. Intertek understands that it bears the burden of proof.

---

[6]   As noted here and in the Statement of Facts, Plaintiff's Brief's statement that Intertek
has presented evidence of its good faith and reasonable efforts to comply is simply false.
To the extent that Plaintiff implies that there is a dearth of deposition testimony on the
issue, Intertek notes that the Rule 30(b)(6) Deposition Notice Plaintiff served did not
include this as a subject on which Intertek was to present a witness.  (Hughes Decl.,
Exhibit G).

In evaluating the question, the Third Circuit and other courts have focused on the nature of the alleged violation, the clarity (or lack thereof) of the rule in question, and the presence or absence of binding precedent.  Thus, in Brock, the court noted that, "[t]he ambiguity of the regulation, the government's inconsistency on the legitimacy of the [pay practice], and the closeness of the question all argue that [employer] had a reasonable basis for presuming its pay plan complied with the provisions of the FLSA." 846 F.3d at 187. "Any uncertainty about the application of the FLSA may be considered in determining whether to impose liquidated damages." Cross v. Arkansas Forestry Comm'n, 938 F.2d 912 (8th Cir. 1991). In Quirk v. Baltimore County, 895 F.Supp. 773 (D. Md. 1995), the court found that liquidated damages were not warranted where there was no binding precedent from the court of appeals, there was legal authority which supported the employer's position and, "the state of the law was, and remains, so unsettled . . . ." 895 F.Supp. at 788. See also, Thomas v. County of Fairfax, Va., 758 F. Supp. 353, 368 (E.D. Va. 1991) (ambiguity of the regulations at issue and the closeness of the question presented supported the employer's position that it acted reasonably and in good faith); Hoge v. Honda of Am. Mfg., 384 F.3d 238, 251 (6th Cir. 2008) (unsettled nature of FMLA issue—which uses an identical liquidated damages test—supported finding that employer's actions were objectively reasonable); Laffey, 567 F.2d at 467 (ambiguous legal requirements may provide reasonable grounds for employer's good faith but erroneous belief that he is in conformity with law); Harris v. District of Columbia, 749 F. Supp. 301 (D.D.C. 1990) (ambiguous legal requirements may provide reasonable grounds for employer's good faith).

Here, Intertek instituted its FWW over 25 years ago. (Adeva Dep., 75; Vanbenschoten Declaration at ¶2). Admittedly, given the passage of time and the departure of the employees who were involved in the initial decision to implement it, Intertek has no hard evidence of precisely what inquiry was made at that time. We do know, however, that the FWW system was set up comply with the Supreme Court's decision in <u>Overnight Motor</u> and §778.114. (Exhibits E and G to Plaintiff's Motion). As detailed above, nothing in §778.114 expressly precludes the payment of premiums or bonuses. We also know that, at that time there was no other authority expressly or impliedly precluding payment of premiums or bonuses in an FWW plan. What limited authority that did exist on the issue supported the proposition that payment of premiums and bonuses was permissible. *See, e.g.,* <u>Spring v. Washington Glass Co.</u>, 153 F.Supp. 312 (W.D.Pa. 1957). 29 U.S.C. 207(e); 29 C.F.R. 778.208.

In addition, Intertek researched the applicable law sufficiently to know that some states – notably, California, Alaska, and other West Coast states – prohibit payment of overtime by FWW altogether, and Intertek does not pay by FWW there. (Vanbenschoten Dep. at 19).

In 1998, Intertek had its FWW practice reviewed by outside counsel, who were experienced in labor and employment law, to determine whether it was proper. Intertek was advised by counsel that it did comply with the FLSA. (Vanbenschoten Decl. at ¶2). From then until the institution of the current lawsuit, no litigation or other claim was ever filed against Intertek challenging its FWW policy. (*Id.* ¶3).

In 2005, the New Jersey Department of Labor and Workforce Development ("NJDOL") audited Intertek's pay practices for inspectors in New Jersey. In the course of

the audit, Intertek supplied them with all relevant documents relating to its pay practices, including FWW, and answered all questions. (Vanbenschoten Decl. ¶4). At the conclusion of the audit, the NJDOL did not issue any challenge or citation to Intertek for its FWW, lending further support to the company's understanding that its FWW was proper. (Vanbenschoten Decl. ¶4). Additionally, Intertek had legal counsel assist it in connection with the NJDOL audit, implementing some changes required by New Jersey law, unrelated to FWW. (Vanbenschoten Dep., p. 96).

In the meantime, Intertek's Human Resources professionals stayed abreast of developments in labor and employment law, including attending classes on employment issues, including courses offered on FLSA by the Society of Human Resources Management ("SHRM") and law firms, and by reading legal updates on the law. (Vanbenschoten Dep., p. 14-15).

In all of its efforts to stay abreast of developments in the law, and in its consultation with counsel, Intertek never learned that its payments of premiums or bonuses could be prohibited under FWW.  This is hardly surprising, since the first and only time an FWW plan has ever been disallowed even in part because of payment of premiums and bonuses was the Ayers case in 2007,[7] and there was ample authority holding precisely the opposite prior to that.

Upon learning of the Ayers decision, Intertek's Human Resources Department consulted with experienced labor and employment attorneys to determine whether its FWW was still compliant with the FLSA.  (Vanbenschoten Decl. ¶6). At that point, no

---

[7]     It is true that O'Brien v. Agawam, was decided in 2003.  However, as noted above, and as noted by the Ayers court, O'Brien was not in fact an FWW case, and its opinion on the salient issue was dicta.  Ayers, 2007 WL 3171342, *3.

complaint or claim had been made against Intertek. Rather, Intertek was being proactive to ascertain its legal obligations. Intertek was advised that its FWW practices differed in significant ways from the practices found unlawful in <u>Ayers</u>, and that there was legal authority holding that payment of premiums is permitted under FWW. (Vanbenschoten Decl. ¶6). Armed with this information, and believing that its pay practice was lawful and correct, Intertek continued its FWW practice. (*Id.*).

In July, 2008 Intertek became aware that the DOL issued proposed rules to revise a number of its regulations and interpretive bulletins relating to the FLSA. (Vanbenschoten Decl. ¶7). Among the many pay practices addressed in the proposal was the FWW and, specifically, the payment of premiums and bonuses under the FWW. 73 Fed. Reg. 145, p. 43670. The proposal clarified the language of §778.114 to expressly state that payment of premiums must be included in calculating the overtime due under FWW and to further state:

> Payment of overtime premiums and other bonus and non-overtime premium payments will not invalidate the "fluctuating workweek" method of overtime payment, but such payments must be included in the calculation of the regular rate . . . .

73 Fed. Reg. 145, p. 43670. The proposed revision went on to give specific examples of how FWW overtime would be calculated for employees who receive premiums and bonuses. *Id.* The DOL's proposed clarification to the language of §778.114 reconfirmed Intertek's belief that its interpretation of the FWW rule was consistent with the DOL's interpretation, and had been all along. (Vanbenschoten Decl. ¶7)

The DOL was very specific that the revision to §778.114 was <u>not</u> a *change* to the law, but was merely a *clarification* the DOL thought necessary because of confusion that

had bedeviled both courts and employers over the issue.  Indeed the DOL noted that none

of the revisions it was proposing represented changes from the law:

> In this proposed rule, the Department of Labor (Department or DOL) proposes to revise regulations issued pursuant to the Fair Labor Standards Act of 1938 (FLSA) and the Portal-to-Portal Act of 1947 (Portal Act) that have become out of date because of subsequent legislation or court decisions.

73 Fed. Reg. 145, p. 43654.  In its Executive Order 12866 Statement regarding the

proposed revisions, the DOL wrote:

> The Department has determined that the proposed changes will not result in any additional compliance costs for regulated entities because the current compliance obligations derive from current law and not the outdated regulatory provisions that have been superseded years ago.

73 Fed. Reg. 145, p. 43662.

> With respect to the revision to §778.114 specifically, the DOL wrote:

> The proposed rule would also <u>clarify</u> the Department's regulation at 29 C.F.R. 778.114 addressing the fluctuating workweek method of computing overtime compensation for salaried nonexempt employees. . . . The payment of additional bonus supplements and premium payments to employees compensated under the fluctuating workweek method has presented challenges to both employers and the courts in applying the current regulations.

> \*          \*          \*

> Paying employees bonus or premium payments for certain activities such as working undesirable hours is a common and beneficial practice for employees.    Moreover, the Department's proposed <u>clarification</u> is consistent with the Supreme Court's decision in *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942), on which the existing regulation is patterned. . . . The Department's proposed <u>clarification</u> would eliminate any disincentive for employers to pay additional bona fide bonus or premium payments.

73 Fed. Reg. 145, p. 43662 (emphasis added). Finally, the DOL wrote that:

> The Department has determined that the proposed regulatory clarification will have no measurable economic effect on the public except to possibly reduce some litigation.

73 Fed. Reg. 145, 43665.

Thus, the proposed language revision clarified that the DOL's position all along has been that payment of premiums and bonuses is permissible under the FWW, as long as such premiums and bonuses are included in the calculation of the regular rate. The proposed rule revising all these sections has not yet been enacted. Nevertheless, it demonstrates that the understanding of the DOL – the federal agency responsible for interpreting and enforcing the FLSA – is precisely the same understanding Intertek has had, and has based its pay practices upon. Again, the DOL has never issued any contrary rule or guidance.

In these circumstances, there simply is no basis for a finding of willfulness and liquidated damages should not be awarded. The <u>Brock</u> case is instructive. There, the employer classified certain supervisory employees as exempt under the FLSA, but did not pay them on a salary basis. Instead, the employer Claridge paid the employees hourly, but guaranteed them that they would earn at least $250.00 per week and would "bump up" their pay to achieve that in weeks where their hours would not be sufficient to meet the $250.00 number. In operation, however, the employer failed to pay for hours the employees missed due to sickness or other valid absence, and in a number of instances failed to make the "bump up" payments required to get particular employees to the minimum. The DOL investigated, and notified Claridge that the classification of the employees as exempt was improper because of the pay practice. Claridge disagreed with

30

the DOL's opinion as to the legality of the pay practice, and continued it, though it did go back and make payments to those employees who had not received "bump ups."

The DOL brought suit under the FLSA. Ultimately, the district court (Judge Cohen) held that the pay practice did not comply with the requirements for exempt status, and ruled for the DOL, but denied liquidated damages.  On appeal, the Third Circuit addressed the liquidated damages issue.  It noted that the question of whether minimum guarantees complied with the "salary basis" test was not clear-cut, and that there had been varying, and somewhat contradictory, decisions and guidance from the DOL over several years.  All of this militated against an award of liquidated damages:

> The ambiguity of the regulation, the government's inconsistency on the legitimacy of minimum guarantees, and the closeness of the question all argue that Claridge had a reasonable basis for presuming its pay plan complied with the provisions of the FLSA.

846 F.3d at 187.  The Third Circuit also expressly rejected the argument that Claridge's conduct was willful in failing to seek DOL approval of the practice: "Even had the Secretary expressly disapproved this plan, we cannot say that Claridge's violation would have been willful, given the closeness of the question." 846 F.3d at 188.  The court further rejected DOL's argument that Claridge was willful merely for continuing the pay practice after the DOL had declared it improper:

> Private parties must retain a right to disagree with the Secretary's interpretation of the regulations, especially here where the question is a close one.  Such disagreement is not willfulness.

*Id.*  The Third Circuit did remand the issue, but on the sole issue of whether Claridge knew that the guaranteed payments were not in fact being made.  *(Id.).*

On remand, Judge Cohen affirmed his earlier ruling, finding that Claridge had acted reasonably and in good faith:

> The fact that we found that their whole payment scheme violative as an hourly rather than a salary basis, without more, does not impugn The Claridge's good faith that they were in compliance before our ruling, not only because of the complexity of the statute, but also because of the closeness of their plan to actual compliance.

711 F.Supp. 779, 783 (D.N.J. 1989). Echoing the Third Circuit, Judge Cohen also rejected the argument that liquidated damages were appropriate due to Claridge's refusal to change its practice when the DOL declared it unlawful: "the fact that The Claridge did not change its pay practices until after we found them to be violative was meaningless to us on the question of whether The Claridge was asserting its position in good faith and with a reasonable belief of compliance prior to our ruling." *Id.*

This same reasoning requires summary judgment for Intertek on the issue of liquidated damages. Intertek's pay practice has been in effect for decades. There is absolutely no pronouncement or guidance from the DOL that in any way suggests that Intertek's practice violates the FLSA. On the contrary, the only DOL pronouncements that do exist support Intertek's position that payment of premiums and bonuses is lawful under FWW. There are numerous court decisions holding the same.

Despite all this, Plaintiff argues that liquidated damages should be imposed because Intertek did not change its pay practice immediately upon learning of the <u>Ayers</u> decision. That is, according to Plaintiff, Intertek failed to act in good faith because it failed to completely alter its overtime practice based upon an unpublished decision from a district court in a jurisdiction where Intertek does not even do business.

This is precisely the argument the Third Circuit and Judge Cohen rejected in <u>Brock</u>. The mere fact that there is some contrary opinion on an issue does not mean that the employer lacks good faith or that liquidated damages can be awarded. Where there

32

are divergent authorities on an issue, an employer does not lack good faith in electing to follow one set of opinions rather than the other. 846 F.3d at 187; 711 F.Supp. at 783. Indeed, in <u>Brock</u> the circumstances would have justified liquidated damages far more than they do here, for there the DOL had examined the employer's own pay practice and declared it unlawful. No such thing happened here.

In short, there is no basis for awarding liquidated damages. Intertek is entitled to judgment as a matter of law dismissing the claim.

**POINT III**

**INTERTEK'S ACTIONS WERE NOT "WILLFUL"
AND THE 2-YEAR STATUTE OF LIMITATIONS
APPLIES**

In light of the fact that Intertek's payment method was proper there is no violation.  Even if, somehow, the court were to find that it was improper, there is no basis for Plaintiff's assertion that such violation was "willful."  Consequently, even if Plaintiff were entitled to damages for unpaid overtime, the damages for each plaintiff or opt-in would be limited to the unpaid overtime in the two (2) years prior to the date  each plaintiff or opt-in filed his or her claim. 29 U.S.C. § 256(a); <u>Woodard v. FedEx Freight East</u>, 250 F.R.D. 178, 193 (M.D.Pa. 2008)(opt-in's filings do not "relate back" to the filing of the original complaint; statute of limitations is tolled for each opt-in only on the date his consent is filed with the court).

A "violation of ... the FLSA is willful if the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." <u>Brock v. Richland Shoe Co.</u>, 799 F.2d 80, 81 (3d Cir. 1986). S<i>ee also,</i> 5 C.F.R. § 551.104  (stating a "[w]illful violation means a violation in circumstances where the [employer] knew its

33

conduct was prohibited by the [FLSA] or showed reckless disregard of the requirements of the [FLSA]").  A willful violation occurs when an employer is "'evidently indifferent' to the FLSA's requirements." Albanese v. Bergen County, 991 F.Supp. 410, 425 (D.N.J. 1997) (citing Martin v. Selker Bros., Inc., 949 F.2d 1286, 1296 (3d Cir. 1991)).  The "word 'willful' is synonymous with words like 'voluntary,' 'deliberate,' and 'intentional,' " McLaughlin v. Richland Shoe Co, 486 U.S. 128, 133 (1985) (citation omitted). *See also* Brock, 799 F.2d at 83 ("willfulness is akin to intentionality"). The term "is generally understood to refer to conduct that is not merely negligent." McLaughlin, 486 U.S. at 133.

The same facts and legal issues outlined in Point II compel the entry of summary judgment in favor of Intertek on the issue of willfulness.  The arguments are even more compelling because, unlike liquidated damages, Plaintiff bears the burden of proving willfulness. Bull v. U.S., 479 F.3d 1365, 1379 (Fed. Cir. 2007) *citing*, McLaughlin v. Richland Shoe Co., 486 U.S. at 133; Davis v. Mountaire Farms, Inc., 598 F.Supp.2d 582, 589 (D. Del. 2009). The Supreme Court has in fact held that even if the employer acted *unreasonably* in determining its legal obligation, such conduct does not justify a finding of willfulness; instead, the court must find the employer's conduct to have been deliberate or, at a minimum, reckless. Richland Shoe, 486 U.S. at 135.

Here, there simply is no evidence that Intertek acted deliberately to violate the FLSA or that it recklessly failed to comply with the law. The pay practice was initiated in compliance with existing law, at a time when there was not a single legal authority that even intimated that payment of premiums and bonuses would be improper.  Through roughly three decades, no legal challenge was ever raised to Intertek's FWW overtime

34

practice. Despite staying current on employment law issues, consulting with its attorneys about pay issues, and using a professional payroll service, Intertek never learned there even was a possible issue until 2007 when the <u>Ayers</u> case became the first to void an FWW plan in part on the basis of payment of premiums.    Upon learning of <u>Ayers</u> Intertek consulted with its attorneys. It continued its FWW practice in light of the other authorities supporting its practice, which has been outlined above. As in <u>Brock</u>, Intertek's decision to follow one line of authorities on the issue, rather than the one Plaintiff favors, does not constitute willfulness. 846 F.3d at 188 n. 9 ("disagreement is not willfulness").

There is no basis to find that Intertek acted willfully, and Intertek respectfully requests that the court grant summary judgment, holding that the statute of limitations is two (2) years.

## <u>CONCLUSION</u>

Based upon the foregoing, Defendant Intertek USA, Inc. respectfully requests that the court deny Plaintiff's Motion for summary Judgment, and grant Defendant's Cross-motion for summary Judgment, dismissing the Complaint in its entirety and with prejudice.

Respectfully submitted,
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
Attorneys for Defendant


By:    /s/ Peter O. Hughes
Peter O. Hughes
Peter.Hughes@ogletreedeakins.com

Dated:  September 20, 2009

7718544.1 (OGLETREE)

35