# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

------------------------------------------------------

WENCILIO ADEVA, individually and on behalf of all other persons similarly situated,

Plaintiffs,

v.

INTERTEK USA INC. f/k/a CALEB BRETT USA INC. and INTERTEK CALEB BRETT, INC. a foreign corporation,

Defendants.

------------------------------------------------------

HONORABLE STANLEY R. CHESLER
CIVIL ACTION NO. 09-CV-01096-SRC-MAS

Civil Action

**ORDER APPROVING SETTLEMENT**

THIS MATTER HAVING COME BEFORE THE COURT upon the joint application of the parties for approval of the settlement of this matter on a collective basis, and having reviewed the application and the Settlement Agreement in chambers, and the Court being familiar with the facts, legal issues and procedural history, and finding that the settlement is the result of contested litigation between the partes, and represents a fair and reasonable resolution of a *bona fide* dispute, and for good cause shown,

IT IS, on this 22ⁿᵈ day of _____, 2010

ORDERED that the Settlement Agreement and the settlement be and hereby are approved.

_____
Stanley R. Chesler, U.S.D.J.

9430325.1 (OGLETREE)

# MORGAN & MORGAN®

## A PROFESSIONAL ASSOCIATION

*Attorneys At Law*

REPLY TO DAVIE

November 22, 2010

**ATTORNEYS AT LAW**

KELLY A. AMRITT
JAMES D. ARNOLD, Jr.
RUSSELL E. ARTILLE
H. SCOTT BATES †
ALEXANDER BILLIAS
T LEE BODIE
SCOTT T. BORDERS
GREGORY J. BOSSE
WILLIAM B. BOWLES
ADAM BRUM
DONALD W. BUCKLE
NICHOLAS A. BUONI
KABAH S. BURRELL
KEVIN J. CARDEN
BRUCE H. CARRAWAY, III ****
BEVERLY A. CARSON ****
KEITH M. CARTER †
MICHAEL J. CARTER
RICHARD B. CELLER
ALEXANDER M. CLEM
RONALD C. CONNER ****
RAMEL L. COTTON
WILLIAM R. DANIEL
VINCENT M. D'ASSARO †
MICHAEL L. DAVIS
LOUIS A. DEFREITAS, JR
JOHN W. DILL †
JAMES J. DYE
WILLIAM FINN
GREGORIO A. FRANCIS
ANDREW FRISCH
STEVEN C. GODDARD
MICHAEL GOETZ
CHRISTOPHER J. GRADDOCK ****
RYAN J. HAYES
DAVID G. HENRY
HERBERT H. HOFMANN II
WILLIAM P. HOWARD
KATHERINE V. HUNG ****
ANTHONY M. IANNACIO
MARTIN J. JAFFE
WILLEA L. JONES
SUMEET KAUL
JAMES W. KEETER
JAMES J. KELLEHER ^ ‡
HANS KENNON
STEPHEN J. KNOX †
RYAN C. KUHL
GRANT A. KUVIN
ARMANDO T. LAURITANO
CLINT M. LAVENDER
CARLOS V. LEACH
JASON R. LEONARD ****
JOSEPH A. LINNEHAN †
JAMES T. LYNCH
MICHAEL D. MARRESE
BRIAN K. McCLAIN
W CHARLES MELTMAR † ****
JASON S. MILLER
TODD K. MINER
W. CLAY MITCHELL, JR
KEITH R. MITNIK †
DAVID B. MOFFETT †
HECTOR A. MORE
C. RYAN MORGAN
JOHN B. MORGAN
ULTIMA D. MORGAN
DAVID H. MOSKOWITZ ****
HENRY P. MOWRY
OMAR L. NELSON ****
DANIEL J. NEWLIN △
CHRISTOPHER H. NEYLAND *****
KEENAN R.S. NIX † ****
DONNY A. OWENS
NICHOLAS P. PANAGAKIS
R.A. PATTERSSON, III
KIRK A. PERROW
RONSON J. PETREE
FRANK W. PIAZZA
E. NANNETTE PICCOLO
GREGORY D. PRYSOCK †
MICHAEL T. REESE
GARRY J. RHODEN *
DAVID I. RICKEY *
DARRYL E. ROUSON
CAROLYN M. SALZMANN
ROBERT J. SCANLAN
RANDY E. SCHIMMELPFENNIG †
JAMES H. SCHMITT
P. CHRIS SCHRAEDER
JOSEPH H. SHAUGHNESSY
DANIEL W. SHEPPARD †
CHRISTOPHER M. SIMON ****
MICHAEL J. SMITH
DAVID A. SMITH
DEIRDRE M. STEPHENS-JOHNSON ****
CRAIG R. STEVENS †
L. CHRIS STEWART ****
MICHAEL F SUTTON †
HARRAH E. UDELL
SCOTT J. URICCHIO
BASIL A. VALDIVIA
BRIAN C. VIGNESS †
IVAN D. VORONEC
SCOTT WM. WEINSTEIN
SCOTT M. WHITLEY †

Honorable Stanley R. Chesler, U.S.D.J.
District of New Jersey
Frank R. Lautenberg US Post Office & Courthouse
Room 417
Newark, New Jersey 07101

Re:   **Adeva v. Intertek USA Inc.**
      **Civil Action No.: 2:09-cv-01096-SRC-MAS**

Dear Judge Chesler:

This firm represents the Plaintiffs, Wencilio Adeva, et al. ("Plaintiffs"). Along with Ogletree, Deakins, Nash, Smoak & Stewart, P.C., attorneys for the Defendants, we hereby jointly request approval by the court of the parties' settlement of this collective action under the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.* ("FLSA"). The parties believe that the settlement is fair and reasonable.

Please note that there is a settlement under §216(b) of the FLSA, and is ***not*** made as a class settlement under *Fed.R.Civ.P.* 23. Consequently, the settlement affects only those 437 individuals who have affirmatively opted into the case and are represented by Plaintiffs' counsel. The settlement does not affect the rights of any non-parties.

Finally, the parties have negotiated this as a confidential settlement, and we respectfully request that the specific terms of the settlement, including the amount of the monetary payments, not be placed on the public record.

While the issue of whether settlement of contested FLSA claims needs to be approved by the court is an open question in this Circuit, the parties seek approval of this settlement to ensure that a valid and enforceable release of Plaintiffs' FLSA claims is effected. Where, as here, the litigation arises from a private enforcement action under the FLSA, the standard for approval is straight forward: the district court may approve a fair and reasonable settlement if it was reached as a result of contested litigation to resolve a *bona fide* dispute under the FLSA. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1352-54 (11th Cir. 1982) (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697 (1945)). Because this

SUITE 1100
76 SOUTH LAURA STREET
JACKSONVILLE
FLORIDA 32202-3433
(904) 398-2722
FAX (904) 398-2334

SUITE 4200
191 PEACHTREE STREET NE
ATLANTA
GEORGIA 30303
(404) 965-8811
FAX: (404) 965-8812

SUITE 3
6824 GRIFFIN ROAD
DAVIE
FLORIDA 33314
(954) 318-0268
FAX: (954) 333-3515

SUITE 777
ONE JACKSON PLACE
188 E. CAPITOL STREET
JACKSON
MISSISSIPPI 39201
(601) 949-3388
FAX: (601) 949-3399

198 BROADWAY AVE
KISSIMMEE
FLORIDA 34741
(407) 452-6900
FAX: (407) 452-6989

SUITE 150J
695 CENTRAL AVENUE
ST. PETERSBURG
FLORIDA 33701
(727) 490-2001
FAX (727) 490-2015

www.forthepeople.com

OF COUNSEL
HORACE R. BROADNAX
RICHARD I. CERVELLI
MICHAEL ESPY
MICHAEL H. HOUTZ
J. MICHAEL PAPANTONIO
CLAY M. TOWNSEND

BOARD CERTIFIED
CIVIL TRIAL LAWYER
BOARD CERTIFIED
WORKERS COMPENSATION
LAWYER

* LICENSED IN ARIZONA ONLY
** LICENSED IN WASHINGTON D.C ONLY
*** LICENSED IN GEORGIA ONLY
**** LICENSED IN MISSISSIPPI ONLY
^ LICENSED IN NEW YORK
△ LICENSED IN GEORGIA
‡ LICENSED IN ILLINOIS
† LICENSED IN KY, FL, MS, TN

settlement clearly meets this standard, the parties respectfully request this court's approval of the Settlement Agreement.

As the court is aware, this has been a hard-fought and lengthy litigation. Named Plaintiff Wencilio Adeva filed the initial Complaint on November 30, 2007 alleging a collective action under 29 U.S.C. §216(b) on behalf of himself and other individuals employed by Intertek as Inspectors and paid pursuant to the Fluctuating Workweek ("FWW") method. Upon motion of defendant Intertek, this matter eventually was transferred to the District of New Jersey. The parties have engaged in extensive discovery, including the exchange of voluminous payroll and time records, and depositions of named Plaintiff Adeva, a number of the opt-in Plaintiffs, and several representatives of Intertek. Each side also has retained expert consultants to advise each regarding the calculations of the amounts of potential damages. In July 2009, the parties mediated the dispute before Michael Young, Esq. a well-respected mediator in New York City with extensive experience in mediating complex wage and hour matters. The parties were not able to resolve the matter at that time.

Thereafter, the parties filed cross-motions for summary judgment. On January 16, 2010 the court granted in part, and denied in part, each party's motions. Your Honor held that Intertek's method of paying the FWW violated the FLSA overtime requirements, but held that Intertek's conduct was not willful. The parties thereafter engaged in further discovery.

On June 14, 2010 the parties held mediation in Atlanta, Georgia before Hunter Hughes, Esq., a nationally-renowned mediator with extensive experience in mediating FLSA collective actions and other wage and hour matters.[1] In the course of that mediation, the parties were able to reach a settlement of the dispute. Since that time, the parties have engaged in further negotiations and discussions regarding the specific terms of the Settlement Agreement and participants in the settlement. Having resolved all of the outstanding issues, Plaintiffs and Defendant Intertek hereby present the Settlement Agreement to Your Honor for approval.

## THE SETTLEMENT

The specific terms of the settlement are set forth in the Settlement Agreement and Release of Claims submitted herewith. As noted above, the Parties have agreed to keep the specific terms of the Settlement Agreement confidential.

In general terms, Intertek has agreed to pay a substantial seven figure settlement into a fund, from which would be paid all settlement proceeds to the Plaintiffs, all FICA and other taxes on the settlement proceeds, all of Plaintiffs' attorneys' fees, costs of litigation, experts, etc. The amount of the settlement fund

---

[1] Mediator Hughes is not related to Peter Hughes, lead counsel for the Defendants.

was the result of lengthy negotiations for more than two years of involving mediation with two different experienced and highly-regarded mediators. There was, and is, substantial dispute between the parties regarding the proper calculation of the amount of overtime pay, if any, due to Plaintiffs. The amount of the Settlement Fund represents a substantial compromise by both parties of what each believes are the proper calculation of potential damages for the Plaintiffs would be if the matter proceeded to trial. In addition, the Settlement Agreement provides for payments to several of the Plaintiffs who potentially would otherwise receive no award because of the statute of limitations. All told each of the 437 Plaintiffs is receiving meaningful payments, the amount of which vary by (i) the individual Plaintiffs' rate of pay; (ii) the number of weeks the individual Plaintiffs claim they were not properly paid for overtime; and (iii) the date the individual Plaintiff filed his "Consent to Opt In and Participate as a Party Plaintiff" with the Court. (See Exhibit A to the Settlement Agreement).[2]  In return for receiving payments under the Settlement Agreements, each Plaintiff agrees to release all claims for allegedly unpaid wages and related claims.

After approval of the settlement, Intertek shall deposit the settlement funds with a third-party administrator, chosen by Plaintiffs, which administrator shall have responsibility for distributing the settlement proceeds to the Plaintiffs in accordance with the distribution calculation prepared by Plaintiffs' attorneys and the experts retained by Plaintiffs. Following distribution of the settlement funds, Plaintiffs' shall file dismissal documents and take all steps necessary to dismiss the Lawsuit with prejudice.

Pursuant to the terms of the Settlement Agreement, Plaintiff's Attorneys also seek approval of their attorneys' fees and expenses. Defendant Intertek does not oppose their request.

## ARGUMENT

The court's inquiry as to the fairness of a FLSA settlement arising from a private enforcement action is two-pronged. First, the court must be satisfied that the settlement was the product of "contested litigation." Second, the court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the Parties under the FLSA. Typically, courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

## I.     The Settlement Is The Product Of Contested Litigation.

There is no question the proposed settlement is the product of contested

---

[2]    Even Plaintiffs whose claims otherwise would be barred by the statute of limitations or who worked no overtime are receiving payments of at least $100.00.

litigation.   Prior to settlement, the Parties had a full opportunity to analyze pertinent factual and legal issues and assess the strengths and weaknesses of their claims and defenses.   Accordingly, the Court should readily conclude the proposed settlement was the product of contested litigation.

## II.   The Proposed Settlement Reflects A Fair And Reasonable Resolution of a *Bona Fide* Dispute Between The Parties.

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Court should readily conclude both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

### A.   A Bona Fide Dispute Existed Between The Parties.

If Plaintiffs' allegations were ultimately correct, Defendant would be faced with the prospect of a monetary verdict in favor of Plaintiff, as well as an obligation to pay litigation fees and costs incurred by Plaintiff and Defendant. If Defendant's arguments were correct, then Plaintiff would face no recovery or a far more limited recovery then they are receiving under the Settlement Agreement.   Accordingly, the Court should readily conclude a *bona fide* dispute between the Parties existed under the FLSA.

### B.   The Proposed Settlement Is Fair And Reasonable.

This settlement was the product of arm's-length negotiations by experienced counsel and has the salutary effect of (i) providing substantial relief to the Plaintiffs, and (ii) eliminating inherent risks both sides would bear if this complex litigation continued to resolution on the merits.   Such negotiations allowed the Parties to bridge the significant gap between the Parties' settlement positions and obtain the resolution described above. Under these circumstances, a presumption of fairness should attach to the proposed settlement. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing Courts rely on the adversary nature of a litigated FLSA case resulting in settlement as indicia of fairness); *see also In re BankAmerica Corp. Securities Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) ("In evaluating the settlement, the Court should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arms-length negotiations between experienced, capable counsel after meaningful discovery.").

Moreover, several additional relevant factors confirm the proposed settlement is fair and reasonable.

## 1.   *Public Policy Favors Settlements.*

Public policy favors settlements. This is particularly true in potential complex cases, such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of protracted litigation. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354 (recognizing policy of encouraging settlement of FLSA litigation); *Farris v. J.C. Penney, Inc.,* 176 F.3d 706, 711 (3d Cir. 1999) ("A strong public policy exists in favor of settlement").

## 2.   *Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial, Immediate Relief*

As outlined above, the Parties disagree about the merits of Plaintiff's claims, the viability of Defendant's defenses, and the proper calculation of damages. If litigation had continued, Plaintiffs would have faced many obstacles, including a jury trial. Plaintiffs faced considerable obstacles in proving both the nature and extent of damages. Additionally, several of the Plaintiff's claims potentially were barred under the statute of limitations.

As reflected in the Settlement Agreement, the proposed settlement brings substantial value to Plaintiffs. The total settlement value is a substantial seven-figure amount. A significant factor weighing in favor of the Court's approval of the proposed settlement is that substantial benefits will be immediately received by Plaintiff and made certain by the settlement. *See In re BankAmerica,* 210 F.R.D. at 701 ("As courts have recognized, when considering settlement agreements they should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere probability of relief in the future, after protracted and expensive litigation. In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush.") (internal quotations omitted)).

## 3.   *This Case has the Potential to be Complex, Expensive and Lengthy.*

This case involves a conditionally certified nationwide FLSA collective action, with 437 Plaintiffs. Several complex issues of fact and law remain unanswered and would have to be resolved at, or before, trial. Trial would be lengthy, costly and complex. Plaintiffs would need to provide testimony sufficient to establish liability as to all of the Plaintiffs. Regardless of the outcome at trial, post-judgment appeals would be inevitable. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed settlement.

## 4.   *The Parties and Their Counsel Support the Settlement*

After thorough investigations of the facts and law, the Parties have gained a comprehensive knowledge of the claims and defenses. Additionally, the Parties have ample evidence necessary to an informed assessment of the proposed settlement. Based on their knowledge of the case and the applicable law, as well

as their experience in similar FLSA actions, Plaintiff's counsel believe the settlement is fair, reasonable and adequate. *In re BankAmerica*, 210 F.R.D. at 702 ("Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight.").

### 5.  *Plaintiff's Counsel Are Experienced FLSA Collective Action Litigators*

The attorneys representing Plaintiffs, Morgan & Morgan, have extensive experience litigating wage and hour cases under the FLSA as well as Rule 23 class actions. They have litigated hundreds of such cases across the country and have represented thousands of employees in wage and hour actions.   The experience and views of Plaintiff's counsel therefore are entitled to substantial weight.

### C.         **Plaintiffs' Attorneys' Fees Are Reasonable.**

Although the undersigned's retainer agreement with the named-Plaintiff calls for a forty (40%) percent contingency fee, in addition to the reimbursement of costs, and the Defendants have stipulated that a thirty-five (35%) contingency fee is not unreasonable under the circumstances of this case, Plaintiff's Counsel seeks a Attorneys' Fees and Costs (combined)[3] that equate to thirty-four (34%) percent of the Class Settlement funds created.  As discussed below, taking all relevant facts into account, such Attorneys' Fees are reasonable and due to be approved by the Court.

The Third Circuit has established two methods for evaluating the award of attorneys' fees: (1) the lodestar approach, and (2) the percentage of the recovery approach. *General Motors*, 55 F.3d at 820-21; *Prudential II*, 148 F.3d at 333. As this Court has previously recognized, in applying the percentage of fund method, "the Third Circuit has emphasized that [t]he percentage of recovery method is generally favored in common fund cases because it allows courts to award fees from the fund in a manner that rewards counsel for success and penalizes it for failure." *Lenahan v. Sears, Roebuck and Co.*, 2006 WL 2085282, at *19 (D.N.J. July 24, 2006)(quoting *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005)(internal citations/quotations omitted).

In *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000), the Third Circuit set forth with specificity the factors that a court should consider in evaluating such requested attorneys' fees. The *Gunter* factors include:

(1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the

---

[3] Calculating Class Counsel's requested fees net of costs and expenses, the requested fees comprise approximately one-third (33%) of the Proposed Settlement.

litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

Evaluating each of these factors in turn, it is clear that the Plaintiffs' counsel's requested thirty-four percent (34%) gross of the settlement fund, or approximately one-third (1/3) net (after costs) of the settlement fund is reasonable under the circumstances of the case at bar, as further discussed below.[4]

## 1. The Size and Nature of the Fund Created and the Number of Class Members Benefitted by the Settlement.

The Class here is comprised of four hundred thirty-seven (437) Inspector Plaintiffs who previously opted into this case, who will share in a cash settlement fund of $9.99 million, less attorneys' fees and expenses, as granted by this Court.[5] Thus, "the settlement amount is significant, especially in view of the risks and obstacles to recovery presented in this case." *Lenahan*, 2006 WL 2085282, at *19.

## 2. The Absence of Objections.

Although, every Plaintiff-Inspector is not aware of the specific final terms of the settlement, as of today's date, those who have learned of the settlement via informal communications with the undersigned counsel have not objected to same, or to the amounts they are to receive (individually) pursuant to the settlement. Further, most if not all of the 436 Opt-in Plaintiffs, specifically consented to allow the named Plaintiff, Wencilio Adeva, make a final determination as to the fairness of the settlement on their behalf. *See* Consents to Join filed in the Docket, generally. Mr. Adeva has authorized and approved the settlement, as required. The lack of objections from the Class supports the reasonableness of the fee request. *See In re Lucent Tech. Inc. Sec. Litig.*, 327 F.Supp.2d 435, 431 (D.N.J. 2004); *Stoetzner v. United States Steel Corp.*, 897 F.2d 115, 11-19 (3d Cir. 1990) (even where 20 members of a 281 person class objected, the court found the response of the class as a whole "strongly favors [the] settlement").

---

[4] Plaintiffs' Counsel will be reimbursed for their costs of the litigation, from the proposed thirty-four (34%) of the Settlement Proceeds, rather than paying reimbursements in addition thereto. To date, inclusive of the approximate fifteen thousand ($15,000.00) to twenty thousand ($20,000.00) dollars it is anticipated it will cost to administer the settlement proceeds,[4] Plaintiffs' undersigned Counsel has expended approximately fifty-five thousand ($55,000.00) dollars in litigation costs. Subtracting these costs from the monies allocated to Plaintiffs' counsel for attorneys fees and costs from the Settlement Proceeds (thereby figuring the net attorneys' fees), the attorneys' fees amount to almost exactly one-third (1/3) of the Settlement.

[5] In an effort to most fairly disperse the settlement proceeds to the class members, no Plaintiff is seeking an incentive award in addition to amounts due under the formula used to calculate each Plaintiff's individual damages.

### 3. *The Skill and Efficiency of Plaintiffs' Counsel.*

The skill and efficiency of the attorneys involved is "measured by the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel." *In re Ikon Office Solutions, Inc. Sec. Litig.,* 194 F.R.D. 16, 194 (E.D.Pa. 2000). Here, Plaintiffs' counsel includes attorneys with significant employment law and class action experience. Class Counsel, as well as counsel for Defendants, also has extensive experience in employment and labor law. The settlement entered with Defendants is a reflection of Class Counsel's skill and experience. *See In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 261 (D.Del. 2002) (class counsel "showed their effectiveness through the favorable cash settlement they were able to obtain"). Thus, this factor too weighs in favor of approval of Plaintiffs' Counsel's requested attorneys' fees. *See Lenahan,* 2006 WL 2085282, at *20.

### 4. *Complexity and Duration of the Litigation.*

As discussed above, this case involved many complex factual and legal issues. Plaintiffs' Counsel have litigated this case for over three (3) years. This included deposing numerous Intertek employees concerning the FWW methodology, reviewing thousands of documents (both paper and electronic ("ESI")), briefing both a § 216(b) collective action motion and a Rule 23 class motion, briefing opposition to Defendants' motion to transfer, briefing a motion to toll equitably the statute of limitations, briefing a motion for summary judgment and opposition to Defendants' motion for summary judgment, answering written discovery and propounding written discovery, engaging in discovery disputes, conducting research of the FWW and its legislative history, and engaging in multiple rounds of mediation.

Settlement negotiations in this case were also complex. The parties needed to reach a settlement that would take into account the individual facts and data underlying each individual Plaintiff-Inspector's claim, based on his or her (1) salary, (2) weeks of employment within the statute of limitations, (3) hours of overtime worked within the statute of limitations, and (4) bonuses, if any, earned during each week during each Plaintiff-Inspector's respective damages period. In light of the above, the parties respectfully submit that the complexity of the issues involved in the prosecution of this litigation also support the requested fee. *See id.*

### 5. *The Risk of Nonpayment.*

The risk of nonpayment in complex cases such as this one is "very real and is heightened when Plaintiffs' Counsel press to achieve the very best result for their clients." *In re AremisSoft,* 201 F.R.D. at 134. Here, the Defendants had numerous defenses in this litigation, to both liability and the calculation of damages, which posed substantial risks to findings of liability and damages.

These defenses included: the legality of the FWW methodology at issue; the recognition that normal commuting time (sought as "work time" by Plaintiffs) is not compensable; the method by which the damages, if any, should be calculated[6]; and most significantly a defense that could have potentially mooted the entire claim, the Department of Labor's proposed "clarification" of 29 C.F.R. § 778.114, during the pendency of this litigation, which would have rendered Defendants' pay methodology in conformance with the FLSA. *(Id.)*

Although Plaintiffs ultimately prevailed on the issue of liability on summary judgment, the Defendants likely would have appealed this ruling to the Third Circuit, if the case had gone to final judgment, following a jury verdict. Further, it is unclear how this Court would have determined Plaintiffs' damages should be calculated. In light of the defenses and arguments asserted by Defendants, Plaintiffs faced the very real risk their claims could have been mooted at any point during the proceedings, by the DOL's actions, or that the Order granting summary judgment could have been reversed by the Third Circuit. Thus, even though Plaintiffs were successful on their motions, Plaintiffs still faced significant risks at trial. Accordingly, the risk of non-payment weighs in favor of approving the fee request. *See Lenahan*, 2006 WL 2085282, at *20-21.

## 6. *The Time Devoted to this Case by Plaintiffs' Counsel.*

Collectively, class counsel has expended thousands of hours working on this case, over the three (3) years the case has been actively litigated. Additionally, as discussed above, Class Counsel has spent substantial amounts of time reviewing voluminous discovery materials, briefing multiple substantive motions before this Court and the predecessor court in the Eastern District of New York, and has spent tremendous efforts negotiating and arriving at the Proposed Settlement. Thus the amount of time and effort Class Counsel spent on this litigation supports the fee request. *See Lenahan*, 2006 WL 2085282, at *21.

## 7. *Awards in Similar Cases.*

The seventh and final *Gunter* factor involves a comparison of the fee request with attorneys' fees awarded in similar cases. Attorneys' fees of thirty (30%) percent, or more, are common in this Circuit. *See In re Rite Aid Corp. Sec. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995) (review of 289 settlements demonstrates "average attorney's fee percentage [of] 31.71%" with a median value that "turns out to be one-third"); *General Motors*, 55 F.3d at 822.

Likewise, attorneys' fees of approximately thirty-three percent (33%) to thirty-five (35%) percent of the common fund are also regularly awarded in labor

---

[6] Defendants asserted that a "smoothed" FWW—based on the average salary plus bonuses earned by each individual Plaintiff-Inspector week-to-week—should be used, while Plaintiffs asserted each Plaintiff-Inspector's damages was due to be calculated by using the FLSA's default time and a half methodology, crediting Defendants for an offset for overtime already paid under their faulty FWW methodology.

and employment class actions. *See In re Safety Components, Inc. Sec. Litig.*, 166 F Supp.2d 72, 102 (D.N.J. 2001) (granting award of 33 1/3% in common fund case and citing to ten cases from this Circuit holding the same); *see also Erie County Retirees Assoc. v. County of Erie, Pennsylvania*, 192 F.Supp.2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund was awarded in ADEA case). Thus, the percentage requested in this matter is reasonable when compared to fee awards in other similar cases in this Circuit.


## CONCLUSION

Based upon the foregoing, the Parties jointly and respectfully request that this Court approve the settlement as a fair and reasonable resolution of a *bona fide* dispute under the FLSA.



Respectfully submitted,

MORGAN & MORGAN, P.A.

Andrew R. Frisch

# SETTLEMENT AGREEMENT

## SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS

This Settlement Agreement and Release of Claims (the "Agreement") is made by and between Intertek USA, Inc. ("Intertek" or "Defendant") and the Plaintiffs, all of whom are identified in Exhibit A to this Agreement (the "Plaintiffs"), and the Plaintiffs' attorneys, Morgan and Morgan, in the case captioned *Wencilio Adeva, et al. v. Intertek USA, Inc., et al.*, Civil Action No. 09-cv-1096-SRC-MAS pending in the United States District Court for the District of New Jersey (the "Lawsuit").

This Agreement is made as a compromise between the Plaintiffs, Plaintiffs' attorneys, and Intertek (collectively, the "Parties") for the complete, and final, settlement of the claims, differences and causes of actions which were raised, or could have been raised, by the Plaintiffs in the Lawsuit.

## RECITALS

WHEREAS, on November 30, 2007, under 29 U.S.C. § 216(b) of the Fair Labor Standards Act ("FLSA"), Wencilio Adeva (collectively, the "Named Plaintiff") filed the Lawsuit against Intertek;

WHEREAS, on February 1, 2008, Intertek filed an Answer denying the material allegations in the Plaintiffs' Complaint;

WHEREAS, by joint stipulation dated and filed with the Court on September 16, 2009, the Plaintiff and Intertek stipulated and agreed to proceed as a collective action under 29 U.S.C. § 216(b), and the Court subsequently authorized notice of the Lawsuit to individuals who worked as Inspectors for Intertek in all states except Alaska, California, Hawaii, Oregon, Washington, and Puerto Rico;

WHEREAS, the Plaintiffs have filed "Consent to Opt In and Participate as Party Plaintiff" forms with the Court, all of which specifically state:

[NAME]

- I_____, consent to join the above styled lawsuit seeking damages for unpaid wages under the FLSA;
- I am similarly situated to the named Plaintiff in this matter because I performed similar duties for the Defendant and was paid in the same regard as the named Plaintiff;
- I authorize the named Plaintiff to file and prosecute the above referenced matter in my name, and on my behalf, and designate the named Plaintiff to make decisions on my behalf concerning the litigation, including negotiating a resolution of my claims, and understand I will be bound by such decisions;
- I agree to be represented by Morgan and Morgan, counsel for the named Plaintiff;
- In the event this action gets conditionally certified and then decertified, I authorize Plaintiff's counsel to reuse this Consent Form to re-file my claims in a separate or related action against Defendant.

WHEREAS, in addition to the Named Plaintiff, as of May 5, 2010, 431 individuals filed consents to join this Lawsuit;

WHEREAS, on July 24, 2009 and on June 14, 2010, the Parties mediated the claims at issue in the Lawsuit, and, at the June 14, 2010 mediation, the Parties agreed to settle the claims in the Lawsuit;

WHEREAS, on July 1, 2010 four additional individuals (Howard Lee Jones, Thomas Keller, Daniel Lefebvre, and Reolito Tan) asked to join the Lawsuit and to settle their potential claims against Intertek pursuant to the terms of the Agreement, and have agreed to become Plaintiffs in the Lawsuit and to abide by the terms of the Agreement, and those individuals also are referred to hereinafter as "Plaintiffs," and shall be deemed to have opted-in effective July 1, 2010.

WHEREAS, on September 22, 2010 Plaintiffs' counsel notified Intertek's attorney that another individual, William Bastian, asked to join the Lawsuit and settle his claims pursuant to

2

the terms of the Agreement, and agreed to become a Plaintiff in the Lawsuit and abide by the terms of the Agreement, and shall also be among those referred to hereinafter as "Plaintiffs," and shall be deemed to have opted-in effective September 22, 2010.

WHEREAS, Intertek denied, and continues to deny, (i) the allegations in the Lawsuit, (ii) liability for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.*, or any other law, and (iii) that damages are owed to the Plaintiffs.  Nonetheless, without admitting or conceding any liability or damages, and to avoid the burden, expense and uncertainty of continuing the Lawsuit, Intertek has agreed to settle the Lawsuit on the terms and conditions set forth in this Agreement;

WHEREAS, the Parties recognize the outcome in the Lawsuit is uncertain, and achieving a final result through litigation requires additional risk, discovery, time and expense; and

WHEREAS, in order to determine how best to serve the interests of all the Plaintiffs, the Named Plaintiff and his counsel have conducted an investigation and evaluation of the facts and law relating to the claims asserted in the Lawsuit.  After balancing the benefits of settlement with the costs, risks, and delay of continued litigation, the Plaintiffs (through the Named Plaintiff) and their counsel believe the Agreement is in the best interests of all of the Plaintiffs and represents a fair, reasonable, and adequate resolution of the Lawsuit.

NOW THEREFORE, the Parties intending to be legally bound, and in consideration of the mutual covenants and other good and valuable consideration set forth below, agree as follows:

**AGREEMENT**

**A.      Consideration:  In order to resolve the Plaintiffs' claims, Intertek agrees to pay a total of $9,990,000.00 ("the Settlement Amount") into a settlement fund ("Settlement Fund").  The Settlement Amount is intended to compensate all qualifying Plaintiffs for all**

3

unpaid wages of any nature; Plaintiffs' attorneys' fees, costs and expenses; all local, state and federal income taxes or withholding taxes of any nature, including FICA and SUTA, for both Plaintiffs and Intertek; all costs of administration of the settlement; and any other miscellaneous costs of any kind associated with this settlement. The "qualifying Plaintiffs" are individuals listed on Exhibit A who both (1) opted in to the Lawsuit on or before September 22, 2010 and (2) actually was employed by Intertek on or after May 1, 2006.

B.     **Settlement Sum Allocation and Taxes:** The Settlement Amount shall be deposited with Garden City Group, 105 Maxess Road, Melville, NY 11747, which shall serve as administrator of the Settlement Fund. The Settlement Fund shall be allocated among the Plaintiffs (the "Individual Payments") as described in Exhibit A to this Agreement. The variables used in determining the Individual Payments are: (i) the individual Plaintiffs' rate of pay; (ii) the number of weeks the individual Plaintiffs claim they were not properly paid for overtime; and (iii) the date the individual Plaintiff filed his "Consent to Opt In and Participate as a Party Plaintiff" with the Court. Intertek agrees to share with the Plaintiffs information reasonably necessary to confirm the amount of the Individual Payments.

1.     Payments to individual Plaintiffs shall be deemed for settlement purposes to be 50% wages and 50% liquidated damages.

2.     Intertek agrees that it will not object to any petition to the Court for fees, costs, and expenses by Plaintiffs that does not exceed thirty-five percent (35%) of the Fund. Further, Intertek agrees that it believes that such fee request is not unreasonable given the nature of this litigation. If the Court does not approve such petition or any part thereof, those amounts that are

not approved by the Court shall be paid on a pro rata basis to the Plaintiffs. The Settlement is not contingent upon the Court's approval of such fee petition.

3.      Intertek shall deliver the Settlement Amount to the Administrator within 33 days of the last of the following events:   (i)  the issuance of the Court's Final Order approving this settlement; (ii)  if an objection has been made to final approval of the settlement, the date on which the objector's time to appeal the Final Approval Order has expired with no appeal or other judicial review having been taken or sought; or (iii)  if an appeal of the Final Approval Order has been timely filed, the date the Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.

4.      Once the Settlement Amount has been delivered to the Administrator, the Administrator shall have five business days to send notice of the settlement and a release form, a copy of which is annexed as Exhibit B, to each Plaintiff at her or his last known address by first class mail.  Plaintiffs shall be advised that they must return a fully executed, unaltered release form to the settlement administrator within 150 days to receive a settlement payment.

5.      No payment from the Settlement Fund shall be made to any Plaintiff unless such Plaintiff has executed a release in favor of Intertek in the form annexed hereto as Exhibit B within 150 days of the mailing of the release form to the plaintiffs.  The settlement administrator shall issue settlement checks to plaintiffs as soon as is practicable following the receipt of a timely, unaltered, and fully executed release form.

6.      To the extent there is interest accrued on the designated principal amounts of the settlement proceeds payable to the class members, while the third-party administrator holds such

proceeds for administration, any accrued interest on such proceeds shall be provided to Plaintiffs' counsel for administration of the settlement agreement.  Any additional monies arising from interest remaining after administration of the settlement shall be credited toward the attorneys' fees and costs due and owing in this matter.  In the event that one or more Plaintiffs do not claim their portion of such proceeds within the time period provided under Paragraph 5, such unclaimed funds shall revert to Intertek, to be held in escrow for seven (7) months.  During the time the money is held in escrow, any Plaintiff may still claim his or her portion of the settlement proceeds.  After the seven (7) months, any monies still remaining in escrow shall revert to Intertek.

   C. **Court Approval:**  The Parties will submit to the Court a joint motion seeking approval of the Parties' settlement under this Agreement. The Parties will cooperate, and take all steps necessary, to effectuate judicial approval of their settlement.  The Parties agree to use reasonable steps as may be necessary to minimize publicity of this settlement, including seeking in chambers approval of the settlement by the Court and requesting the Court to approve the settlement with an Order that does not disclose the details of the settlement.

   **D. Release of Claims:  The Plaintiffs, on behalf of themselves and their heirs, estates, executors, administrators, assigns, transferees and representatives release and forever discharge Intertek and its predecessors, successors, parents, subsidiaries, affiliates, assigns, and all of their present and former directors, officers, employees, agents, shareholders, and representatives (collectively "the Intertek Releasees"), from any and all claims, causes of actions, demands, debts, obligations, damages or liability of any nature whatsoever, known or unknown, which concern, or relate in any way to the payment of wages, commissions, or any other form of compensation, and any and all claims for**

retaliation or interference of rights, whether those claims exist, or allegedly exist, at law or in equity under the common law, contract law, statutory law, the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., and state wage laws, as well as any and all derivative claims under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 et seq. (the "Released Claims"). The Released Claims are intended to include any and all claims that were raised, or could have been raised, in the Lawsuit, and any and all claims for attorneys' fees, costs, expenses and the like, including but not limited to, any claims for attorneys' fees related to services rendered by the Plaintiffs' counsel of record in the Action and/or any other counsel who has provided services to the Plaintiffs.

Named Plaintiff Wencilio Adeva separately shall execute a complete release of all claims, not limited to wage or wage-related claims, in a form acceptable to Intertek.

E.     **No Admission of Liability:** The Parties understand and acknowledge this Agreement is the result of a compromise, and shall not be construed as an admission of liability, responsibility, or wrongdoing by Intertek. Intertek expressly denies any liability, responsibility, or wrongdoing as alleged in the Lawsuit. It is also expressly understood by the Parties that the Plaintiffs shall not be deemed a "prevailing party" for any purpose, including any fee shifting statute, rule, or agreement.

F.     **Dismissal:** Plaintiffs shall take all steps necessary to dismiss the Lawsuit with prejudice within three (3) business days of the last of the following events:  (i) the issuance of the Court's final Order approving this settlement; (ii) if an objection has been made to final approval of the settlement, the date on which the objector's time to appeal the Final Approval Order has expired with no appeal or other judicial review having been taken or sought; or (iii)  if an appeal of the Final Approval Order has been timely filed, the date the

**Final Approval Order is finally affirmed by an appellate court with no possibility of subsequent appeal or other judicial review or the date the appeal(s) or other judicial review are finally dismissed with no possibility of subsequent appeal or other judicial review.**

G. **Confidentiality:**

1. The parties agree to use reasonable steps as may be necessary to minimize publicity of this settlement, including seeking in chambers approval of the settlement by the Court and requesting the Court to approve the settlement with an Order that does not disclose the details of the settlement. The settlement is contingent on the Court's approval of the Settlement Agreement, but is not contingent upon the Court's hearing this matter in chambers or its issuance of an Order in the aforesaid form or format.

2. Nothing in this Agreement is intended to, nor shall it be construed to, impede the rights or duties of the Plaintiffs to honestly file taxes, to honestly report income, to truthfully testify under oath, or to cooperate with any governmental investigation.

H. **No Severability of Provisions:** The provisions of the Agreement shall not be deemed severable. If the Court modifies any portion of this Agreement without the consent of all Parties, any Party may void this Agreement in its entirety.

I. **Knowing and Voluntary Waiver:** The Parties acknowledge and agree that, before entering into the Agreement, they have had sufficient time to consider this Agreement and consult with legal counsel of their choosing concerning its meaning. When entering into the Agreement, the Parties have not relied on any representations or warranties made by the Parties, other than the representations and warranties expressly set forth in this Agreement.

J. **Continuing Jurisdiction:** Nothing in this Agreement is intended to limit the Court's authority to retain continuing, and exclusive, jurisdiction over the Parties to the Agreement,

including all of the Plaintiffs, for the purpose of the administration and enforcement of the Agreement.

**K.     Dispute Resolution:**  The Parties intend for any disputes regarding this Agreement to be heard only by the Court.

**L.     Choice of Law:**  Enforcement of the Agreement shall be governed by, and interpreted under, the laws of the State of New Jersey.

**M.     Named Plaintiff's Authorization:**  The Named Plaintiff and the Plaintiffs' counsel warrant and represent that the Named Plaintiff is a duly authorized representative of all of the Plaintiffs, and the Named Plaintiff is authorized to make decisions on behalf of all of the Plaintiffs, including settlement of the Plaintiffs' claims in the Lawsuit.  The Named Plaintiff and the Plaintiffs' counsel also warrant and represent that they are expressly authorized to take all appropriate action required, or permitted, to be taken by the Plaintiffs under the Agreement to effectuate its terms.

**N.     Amendments/Modifications:**  No waiver, modification or amendment of the terms of the Agreement, whether purportedly made before, or after, the Court's approval of the Agreement, shall be valid or binding unless approved by the Court and made in writing, signed by or on behalf of all of the Parties, and then only to the extent set forth in such written waiver, modification or amendment.

**O.     Binding Agreement:**  The Agreement shall be binding upon, and inure to the benefit of, the Parties, the Intertek Releasees, and their affiliates, agents, employees, beneficiaries, heirs, executors, administrators, predecessors, successors, and assigns.

**P.     No Third-Party Beneficiaries:**  Other than as expressly set forth herein, the Agreement shall not be construed to create rights in, grant remedies to, or delegate any duty, obligation or undertaking to any third party as a beneficiary of this Agreement.

**Q. Cooperation Clause:** The Parties acknowledge it is their intent to consummate the Agreement, and they agree to cooperate and exercise their best efforts to the extent necessary to effectuate and implement all of the terms and conditions of the Agreement.

**R. Entire Agreement:** This Agreement contains the entire agreement between the parties relating to the Agreement, the Lawsuit, and transactions described herein, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a Party or a Party's legal counsel, are merged in this Agreement. No rights may be waived except in writing.

**S. Captions:** The captions or headings of the sections and paragraphs of the Agreement have been inserted for convenience only, and shall have no effect on the construction or interpretation of any part of the Agreement.

**T. When Agreement Becomes Effective:** The Agreement shall become effective upon its approval by the Court.

**U. Signatures; Counterparts:** The Parties may sign the Agreement in counterparts, and signature in counterparts shall have the same force and effect as if the Parties had signed the same instrument. Signature by facsimile shall be deemed effective as if signed in original. Each person signing the Agreement warrants and represents that such person has the authority to do so.

IN WITNESS WHEREOF, the undersigned have executed the Agreement.

[Signatures appear on pages ten (10) through fourteen (14)]

**I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS, AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.**

Named Plaintiff

_____
Wencilio Adeva

Dated this 15 day of November , 2010.

**I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS, AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.**

Intertek USA, Inc.

By: _____

Printed Name: JAY GUTIERREZ

1.

Title: DIRECTOR

Dated this 18 day of NOVEMBER , 2010.

12

**I HAVE READ THIS SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS, AND, UNDERSTANDING ALL OF ITS TERMS, I FREELY SIGN IT.**

Plaintiffs' Counsel

_____

Dated this 16 day of _NOVEMBER_ , 2010.

# EXHIBIT A

**[List of qualified opt-ins]**

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 1 | ARCENEAUX, KOLBY (MANUAL ADD) | 0.0000% | $ 100.00 |
| 2 | BELTRAN, ISRAEL (MANUAL ADD) | 0.0000% | 100.00 |
| 3 | BRADFORD, ROBERT (MANUAL ADD) | 0.0000% | 100.00 |
| 4 | BRAQUET, KERRY (NO DATA FOUND) | 0.0000% | 100.00 |
| 5 | BUSH, DENNIS (MANUAL ADD) | 0.0000% | 100.00 |
| 6 | CAPPELL, WESLEY (NO DATA FOUND) | 0.0000% | 100.00 |
| 7 | CHRISTOPHER DEIST (NO DATA FOUND) | 0.0000% | 100.00 |
| 8 | CORLEY, JONATHAN (NO DATA FOUND) | 0.0000% | 100.00 |
| 9 | DANIELS, RICKIE (MANUAL ADD) | 0.0000% | 100.00 |
| 10 | DE MATOS, PEDRO (NO DATA FOUND) | 0.0000% | 100.00 |
| 11 | DEJESUS, FERNANDO LOPEZ (MANUAL ADD) | 0.0000% | 100.00 |
| 12 | DORIS, JEREMY (MANUAL ADD) | 0.0000% | 100.00 |
| 13 | EDENFIELD, TOBY (MANUAL ADD) | 0.0000% | 100.00 |
| 14 | FAUSTO, ISABEL (MANUAL ADD) | 0.0000% | 100.00 |
| 15 | FINNEY, RUSSELL (MANUAL ADD) | 0.0000% | 100.00 |
| 16 | FLANAGAN, JOHN (MANUAL ADD) | 0.0000% | 100.00 |
| 17 | GILYOT, LEE (MANUAL ADD) | 0.0000% | 100.00 |
| 18 | HENRY, JACOB (NO DATA FOUND) | 0.0000% | 100.00 |
| 19 | HOPPER, THOMAS (MANUAL ADD) | 0.0000% | 100.00 |
| 20 | JULIUS UCHE (NO DATA FOUND) | 0.0000% | 100.00 |
| 21 | LIGHTSEY, JOSEPH (MANUAL ADD) | 0.0000% | 100.00 |
| 22 | LONGMIRE, RICHARD (MANUAL ADD) | 0.0000% | 100.00 |
| 23 | LYONS, SMITTY (NO DATA FOUND) | 0.0000% | 100.00 |
| 24 | MASON, RICK (MANUAL ADD) | 0.0000% | 100.00 |
| 25 | MCCOY, DONALD (MANUAL ADD) | 0.0000% | 100.00 |
| 26 | MCCOY, GREG (NO DATA FOUND) | 0.0000% | 100.00 |
| 27 | MEDLEY, JAMES (MANUAL ADD) | 0.0000% | 100.00 |
| 28 | MEDUS, STEPHEN (MANUAL ADD) | 0.0000% | 100.00 |
| 29 | NORTON, JEREMY (MANUAL ADD) | 0.0000% | 100.00 |
| 30 | O'QUAIN, COREY (NO DATA FOUND) | 0.0000% | 100.00 |
| 31 | PICCOLO, FRANK (MANUAL ADD) | 0.0000% | 100.00 |
| 32 | RODRIGUEZ, DAVID (MANUAL ADD) | 0.0000% | 100.00 |
| 33 | SIMONET, NICHOLAS (MANUAL ADD) | 0.0000% | 100.00 |
| 34 | WALKER, ANTHONY (MANUAL ADD) | 0.0000% | 100.00 |
| 35 | WALKER, JONATHAN (MANUAL ADD) | 0.0000% | 100.00 |
| 36 | HAAK, ZACK | 0.0000% | 100.00 |
| 37 | JONES, HOWARD LEE | 0.0000% | 100.00 |
| 38 | LIGHTSEY, JOE K | 0.0000% | 100.00 |
| 39 | SEAL, CURTIS R | 0.0000% | 100.00 |
| 40 | MIDDLETON, BRIAN | 0.0002% | 100.00 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|
| 41 JACKSON, CHRISTOPHER S | 0.0002% | 100.00 |
| 42 CARLOS, KYLE | 0.0004% | 100.00 |
| 43 PHILLIPS, JASON A | 0.0005% | 100.00 |
| 44 FULTZ, FRENCHY | 0.0008% | 100.00 |
| 45 DENZLINGER, TIMOTHY | 0.0009% | 100.00 |
| 46 SAVOIE, DEREK | 0.0010% | 100.00 |
| 47 SMITH, BARRY CLEMENS | 0.0011% | 100.00 |
| 48 ORTIZ, JOEANGELO E | 0.0013% | 100.00 |
| 49 BOLING, MILTON C | 0.0015% | 100.00 |
| 50 HUNT, TIMOTHY | 0.0015% | 100.00 |
| 51 MALONE, CHRISTOPHER | 0.0016% | 104.28 |
| 52 POIRIER, THOMAS W | 0.0018% | 117.55 |
| 53 COLSTON, COLLIN | 0.0019% | 124.45 |
| 54 PACURARU, REMUS | 0.0025% | 165.61 |
| 55 AUGUSTINE, JOHN | 0.0025% | 167.95 |
| 56 MCDANIEL, CHRISTOPHER | 0.0029% | 193.76 |
| 57 LEWIS, LEVAR A | 0.0030% | 195.05 |
| 58 ACKLEN II, GARY | 0.0032% | 209.94 |
| 59 ROBERTS, CHARLES W | 0.0034% | 224.69 |
| 60 PINEDA, JAMES | 0.0035% | 230.36 |
| 61 VICKREY JR, JOHNNY | 0.0035% | 233.48 |
| 62 MEDUS, SCOTT | 0.0036% | 238.33 |
| 63 CHANDLER, WILLIAM | 0.0037% | 240.72 |
| 64 MUSCELLA, BRIAN | 0.0037% | 245.79 |
| 65 THOMPSON, GARLAN | 0.0040% | 266.35 |
| 66 GANO, JAMES | 0.0045% | 296.35 |
| 67 LEWINSKI, MATTHEW | 0.0046% | 303.34 |
| 68 SOVIK, DAVID | 0.0046% | 305.39 |
| 69 YOHO, CHRISTOPHER M | 0.0050% | 331.49 |
| 70 FALCON, RIGOBERTO | 0.0052% | 342.18 |
| 71 MCKNIGHT, JEFFREY | 0.0052% | 342.40 |
| 72 STELLY, MICHAEL | 0.0052% | 345.57 |
| 73 JONES, JAMES J | 0.0057% | 372.59 |
| 74 JONES, RYAN | 0.0060% | 393.87 |
| 75 VINCENT, BILLY | 0.0061% | 399.09 |
| 76 MAIER, SCOTT | 0.0062% | 408.93 |
| 77 COLLINS, GERALD | 0.0068% | 444.93 |
| 78 BUCHANAN, JUAN | 0.0070% | 458.70 |
| 79 SCALCO, KEITH | 0.0071% | 470.67 |
| 80 MIRE, ALLEN | 0.0074% | 488.17 |

**148731 Adeva, Wencilio vs. Caleb, Brett**
**Payment Due Per Plaintiff**

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 81 | PHILLIPS, DAVID E | 0.0081% | 533.58 |
| 82 | WYSE, MARCUS H | 0.0082% | 537.77 |
| 83 | CALCOTE, ROYDRICK | 0.0087% | 573.03 |
| 84 | LONG, ODAIRYJA | 0.0089% | 584.75 |
| 85 | HUBERT, MICHAEL R | 0.0092% | 607.42 |
| 86 | GRAY, JOSHUA | 0.0097% | 639.00 |
| 87 | CHAVEZ, MATTHEW F | 0.0103% | 676.78 |
| 88 | STANSBURY, CRAIG | 0.0107% | 701.92 |
| 89 | MALONE, PATRICK | 0.0107% | 703.03 |
| 90 | GALVES, MICHAEL | 0.0109% | 715.42 |
| 91 | LAFLEUR, DAVID | 0.0116% | 764.93 |
| 92 | NAVARRE, SCOTT | 0.0127% | 834.84 |
| 93 | GREEN, LEE | 0.0135% | 887.18 |
| 94 | GRIBBEN, BRETT | 0.0140% | 921.97 |
| 95 | SHUMAKER, GARRET | 0.0141% | 929.71 |
| 96 | PEREZ, KEVIN | 0.0142% | 932.35 |
| 97 | JENKINS, ROBERT C | 0.0142% | 933.72 |
| 98 | MANDILE, MICHAEL C | 0.0152% | 1,001.58 |
| 99 | SHORT, SCOTT | 0.0154% | 1,014.22 |
| 100 | FRANCOIS, DELINCE | 0.0160% | 1,057.26 |
| 101 | COLBERT, BRYCE | 0.0166% | 1,096.12 |
| 102 | DUKE, THOMAS | 0.0168% | 1,107.42 |
| 103 | WILLIAMS, ROBERT | 0.0176% | 1,160.36 |
| 104 | RAMDEEN, KEVIN | 0.0178% | 1,174.51 |
| 105 | KEMP, STEVEN | 0.0183% | 1,204.28 |
| 106 | SPAIN, MICHAEL A | 0.0192% | 1,266.22 |
| 107 | PETRY, KENNETH | 0.0194% | 1,281.29 |
| 108 | DACAR, JOSEPH | 0.0196% | 1,289.24 |
| 109 | HELBIG, JOSEPH S | 0.0207% | 1,366.20 |
| 110 | JACKSON, GROVER D | 0.0207% | 1,366.81 |
| 111 | STEWART, STEPHEN | 0.0210% | 1,385.78 |
| 112 | ACOSTA, FRANK | 0.0211% | 1,387.41 |
| 113 | RODI, BRANDEN | 0.0212% | 1,396.75 |
| 114 | TURNER III, JOE | 0.0212% | 1,399.05 |
| 115 | MIRANDES, EDUARDO | 0.0231% | 1,521.40 |
| 116 | CLICK III, WILLIAM | 0.0238% | 1,568.46 |
| 117 | MAYRONNE, PAUL | 0.0242% | 1,595.21 |
| 118 | WILLIAMS, OSWALD | 0.0243% | 1,600.83 |
| 119 | BARNEY, STEVEN | 0.0244% | 1,609.67 |
| 120 | MCEWING, CHRISTOPHER | 0.0247% | 1,625.79 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 121 | OCHOA, RICARDO | 0.0266% | 1,754.60 |
| 122 | NAQUIN, RICKEY | 0.0267% | 1,760.78 |
| 123 | DEPUTY, THOMAS | 0.0286% | 1,883.34 |
| 124 | BROWNE JR, WAYNE | 0.0293% | 1,928.22 |
| 125 | SERRATA, JOHN | 0.0293% | 1,928.37 |
| 126 | CLEVELAND, KENNETH P | 0.0296% | 1,947.90 |
| 127 | BALLARD, TERRY | 0.0302% | 1,993.07 |
| 128 | MIRANDES, ALBERTO L | 0.0304% | 2,001.85 |
| 129 | HELEMS, CHRISTOPHER E | 0.0313% | 2,062.45 |
| 130 | LAMBERT, RICKY | 0.0316% | 2,081.53 |
| 131 | CAVAZOS, JOHNATHAN | 0.0322% | 2,124.62 |
| 132 | GREEN, RICKY LEE | 0.0336% | 2,216.65 |
| 133 | WYATT, JARED | 0.0341% | 2,249.18 |
| 134 | OPARA, EMMANUEL | 0.0357% | 2,351.02 |
| 135 | WILLIAMS, TROY A | 0.0359% | 2,362.66 |
| 136 | LARIMORE, CLIFFORD WESLEY | 0.0366% | 2,410.18 |
| 137 | STACHOWIAK, JONATHAN | 0.0370% | 2,437.04 |
| 138 | LEE III, WALTER | 0.0374% | 2,461.54 |
| 139 | HILL, THOMAS | 0.0374% | 2,463.18 |
| 140 | ZAHRADNIK, RAYMOND | 0.0376% | 2,477.66 |
| 141 | ALEXANDER, JAMES W | 0.0389% | 2,562.54 |
| 142 | GONZALEZ, PABLO | 0.0402% | 2,645.49 |
| 143 | DYKES, JIMMY | 0.0405% | 2,666.89 |
| 144 | CRUZ, MARIO | 0.0411% | 2,705.17 |
| 145 | CASTRO, ANGEL | 0.0411% | 2,707.91 |
| 146 | ZABIN, JOSEPH | 0.0415% | 2,733.01 |
| 147 | HELBIG, JEREMY | 0.0418% | 2,756.17 |
| 148 | KELLUM, ANTHONY | 0.0424% | 2,792.27 |
| 149 | MARTINEZ, ANTHONY G | 0.0426% | 2,805.80 |
| 150 | KING, NATHAN | 0.0449% | 2,959.79 |
| 151 | GIBSON, JAMES D | 0.0450% | 2,962.94 |
| 152 | DURAN, IBOR | 0.0455% | 3,000.75 |
| 153 | SELLERS, JOSHUA | 0.0457% | 3,012.59 |
| 154 | SAENKO, DIMITRY | 0.0457% | 3,013.07 |
| 155 | PEREZ JR, LUIS | 0.0458% | 3,015.80 |
| 156 | CONWAY, ANDREW | 0.0459% | 3,025.61 |
| 157 | CALDERON, DAVID | 0.0475% | 3,128.64 |
| 158 | BURGE JR, ARTHUR | 0.0481% | 3,167.81 |
| 159 | JONES, JAMES ROBERT | 0.0489% | 3,222.00 |
| 160 | MCKELVEY, CHRISTOPHER D | 0.0491% | 3,237.21 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
### Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 161 | SPIVEY JR, RODNEY | 0.0494% | 3,254.40 |
| 162 | CHUNG, WING | 0.0496% | 3,266.47 |
| 163 | ANDERSON, WADE | 0.0533% | 3,511.08 |
| 164 | CASH, MATTHEW | 0.0533% | 3,512.97 |
| 165 | ALVAREZ JR, JOSE L | 0.0534% | 3,517.40 |
| 166 | SCHLOSS, JEREMY W | 0.0559% | 3,681.10 |
| 167 | ADAMS, MICHAEL | 0.0568% | 3,741.32 |
| 168 | STERN, JOHN E | 0.0585% | 3,851.47 |
| 169 | ALEMAN, BERNARDO | 0.0604% | 3,977.85 |
| 170 | PAYNE II, JOHN | 0.0612% | 4,029.44 |
| 171 | WILSON, DANE | 0.0634% | 4,180.41 |
| 172 | WHITE, JAMES | 0.0648% | 4,271.24 |
| 173 | WADDELL, STEVE | 0.0649% | 4,275.82 |
| 174 | CARTER, DWAYNE | 0.0654% | 4,306.22 |
| 175 | LEBLANC, DANIEL | 0.0655% | 4,317.95 |
| 176 | MARSH, WALTER | 0.0660% | 4,348.33 |
| 177 | CHURNEY, MARK | 0.0669% | 4,408.07 |
| 178 | HAYNES, ELIJAH | 0.0672% | 4,427.56 |
| 179 | MILLER, ANTHONY | 0.0677% | 4,459.64 |
| 180 | PEREZ, JUBERTO | 0.0690% | 4,544.35 |
| 181 | DICKSON, CHARLES | 0.0712% | 4,694.56 |
| 182 | FLUKER, ANDREW | 0.0728% | 4,797.89 |
| 183 | SPEACE, JEFFERY | 0.0734% | 4,835.65 |
| 184 | BROWN, KALI | 0.0736% | 4,850.06 |
| 185 | MARQUE, KEVIN | 0.0737% | 4,856.82 |
| 186 | VADEN, BILLY | 0.0752% | 4,952.13 |
| 187 | BORGESON, CHRISTOPHER | 0.0759% | 5,003.35 |
| 188 | SCOGGINS, DAVID | 0.0779% | 5,131.51 |
| 189 | WASHBURN, TIMOTHY | 0.0797% | 5,253.28 |
| 190 | FRENCH, STEVEN | 0.0805% | 5,301.27 |
| 191 | SMITH, ROBERT | 0.0842% | 5,547.17 |
| 192 | BOUDREAUX, MICHAEL | 0.0855% | 5,632.26 |
| 193 | REAGAN, JOSHUA | 0.0877% | 5,781.10 |
| 194 | LEANZA JR, ANTHONY | 0.0896% | 5,902.27 |
| 195 | MORALES, ANDREW | 0.0903% | 5,951.26 |
| 196 | VELEZ, JOSE | 0.0913% | 6,015.62 |
| 197 | JONES, MATTHEW | 0.0928% | 6,112.14 |
| 198 | ZEITLER, JEREMY | 0.0942% | 6,209.78 |
| 199 | HARRINGTON, MICHAEL SHANE | 0.0943% | 6,211.68 |
| 200 | VO, HONG | 0.0947% | 6,240.62 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 201 | O'BRIEN, JAMES | 0.0947% | 6,241.36 |
| 202 | APOLLONI, RICHARD | 0.0955% | 6,294.46 |
| 203 | HEBERT, DAVID | 0.0967% | 6,374.04 |
| 204 | EVANGELISTA, CONRADO | 0.0975% | 6,421.87 |
| 205 | ABADIE, JESSE | 0.0998% | 6,578.34 |
| 206 | HANKS, ANTOINE | 0.1004% | 6,614.99 |
| 207 | CALCOTE, JEFFREY | 0.1013% | 6,671.57 |
| 208 | GONZALEZ, PAUL | 0.1016% | 6,691.24 |
| 209 | CURTICE, TIMOTHY J | 0.1020% | 6,723.78 |
| 210 | OBRIEN, JEREMY | 0.1021% | 6,730.64 |
| 211 | PENTON, TODD | 0.1052% | 6,929.25 |
| 212 | HORRIGAN, BENJAMIN | 0.1059% | 6,980.48 |
| 213 | MAGBY, RICHARD | 0.1069% | 7,044.06 |
| 214 | BRIEDEN, JONATHAN G | 0.1084% | 7,140.99 |
| 215 | CADDELL, WESLEY | 0.1106% | 7,289.05 |
| 216 | THOMPSON, STEPHEN | 0.1120% | 7,382.51 |
| 217 | BEDELL, KENNETH | 0.1130% | 7,444.68 |
| 218 | PRICE, DAVE | 0.1169% | 7,705.14 |
| 219 | ARCENEAUX, KENNETH | 0.1178% | 7,761.64 |
| 220 | KELLEY, TY | 0.1178% | 7,762.79 |
| 221 | HOFFMANN, DAVID | 0.1184% | 7,803.53 |
| 222 | VERDIN SR, PETER | 0.1184% | 7,803.55 |
| 223 | SEWELL, MARK | 0.1185% | 7,811.15 |
| 224 | DELEON, PAUL | 0.1187% | 7,822.34 |
| 225 | EARNEST, GENE | 0.1189% | 7,833.52 |
| 226 | SAMS, CHESTER | 0.1189% | 7,836.52 |
| 227 | SHERLEY, DAVID | 0.1220% | 8,036.96 |
| 228 | REARDON, SEAN R | 0.1254% | 8,261.08 |
| 229 | BROWN T, JAMES | 0.1283% | 8,456.58 |
| 230 | BELL, KEVIN | 0.1307% | 8,614.73 |
| 231 | STALEY, JON | 0.1316% | 8,673.03 |
| 232 | LANKFORD, JESSE | 0.1332% | 8,776.72 |
| 233 | DRAGER, HEATH | 0.1400% | 9,223.10 |
| 234 | RIVERA JR, JESUS | 0.1427% | 9,405.40 |
| 235 | DOUGLASS, RICHARD | 0.1446% | 9,527.96 |
| 236 | ELLIOTT, JERAMIE | 0.1458% | 9,608.90 |
| 237 | MOORE, ANTHONY | 0.1462% | 9,632.94 |
| 238 | QUINONES III, NELSON | 0.1473% | 9,706.05 |
| 239 | COPPINGER, WILLIAM | 0.1474% | 9,709.72 |
| 240 | REAGAN JR, CHARLES | 0.1490% | 9,819.14 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 241 | CRUZ, CHRISTOPHERHARRY | 0.1491% | 9,826.07 |
| 242 | ZORNES JR, RANDALL | 0.1512% | 9,963.77 |
| 243 | ABRAHAM, ETHAN | 0.1514% | 9,975.02 |
| 244 | MUNOZ, ROLANDO | 0.1542% | 10,157.48 |
| 245 | SMITH, CHRISTOPHER | 0.1553% | 10,236.02 |
| 246 | VIRAY, RONAN | 0.1573% | 10,363.21 |
| 247 | FLOYD, ANTHONY | 0.1596% | 10,513.72 |
| 248 | TAN, REOLITO | 0.1612% | 10,624.60 |
| 249 | BRANTLEY, JOEL | 0.1633% | 10,758.83 |
| 250 | HENRY, JACOB | 0.1646% | 10,843.08 |
| 251 | TUN, MYA | 0.1673% | 11,021.73 |
| 252 | GILYOT, LORELL | 0.1678% | 11,054.64 |
| 253 | MITCHELL, JUSTIN | 0.1700% | 11,199.20 |
| 254 | FLENNIKEN, STEVEN | 0.1706% | 11,239.94 |
| 255 | HILL, JASON | 0.1707% | 11,245.79 |
| 256 | GILBERTI, VINCENT | 0.1708% | 11,254.57 |
| 257 | GREEN, ERIC | 0.1714% | 11,291.28 |
| 258 | GREGORY, CALVIN | 0.1724% | 11,358.08 |
| 259 | LARSEN, HANK | 0.1743% | 11,482.22 |
| 260 | GONZALES, JONATHAN | 0.1767% | 11,642.00 |
| 261 | BRIONES, FELIX | 0.1823% | 12,009.79 |
| 262 | BARAGAN, FRANCISCO | 0.1829% | 12,052.85 |
| 263 | ZUTELL III, RUSSELL | 0.1832% | 12,068.83 |
| 264 | FLORES, WILCIS | 0.1859% | 12,249.04 |
| 265 | SMITH, CHASE | 0.1888% | 12,440.99 |
| 266 | WILSON, BRADLEY | 0.1902% | 12,531.33 |
| 267 | LIGUEZ III, THOMAS | 0.1907% | 12,563.41 |
| 268 | ROWLAND, RICHARD | 0.1912% | 12,600.11 |
| 269 | MCCLAIN, TRENT | 0.1914% | 12,608.83 |
| 270 | HILLIARD, WALTER | 0.1914% | 12,613.75 |
| 271 | CURTIS, JEFFREY | 0.1933% | 12,738.77 |
| 272 | SMITH, DALE | 0.1948% | 12,836.06 |
| 273 | PEPITO, DENNIS | 0.1951% | 12,854.12 |
| 274 | BULLARD, CHRISTOPHER | 0.1973% | 12,996.85 |
| 275 | GARABITO, LUIS | 0.1977% | 13,025.67 |
| 276 | SCHLOTTER JR, NORMAN | 0.1982% | 13,059.74 |
| 277 | BARBER, ANTHONY | 0.2001% | 13,181.40 |
| 278 | BURKE, DEVON | 0.2040% | 13,443.47 |
| 279 | STEPHENSON, JACK | 0.2061% | 13,577.08 |
| 280 | PENNY, JOHN | 0.2071% | 13,646.02 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
### Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 281 | CHEW JR, CLARENCE | 0.2074% | 13,666.02 |
| 282 | FRANKS, JAMES | 0.2095% | 13,803.95 |
| 283 | MARKS, BRUCE | 0.2129% | 14,029.72 |
| 284 | KELLUM, ERIC | 0.2170% | 14,295.60 |
| 285 | REED, DEVERETT | 0.2187% | 14,412.72 |
| 286 | JONES, ROBERT | 0.2208% | 14,550.46 |
| 287 | BORGONO BOCANGEL, EDGAR | 0.2231% | 14,702.37 |
| 288 | KILLEN, MICHAEL | 0.2286% | 15,061.63 |
| 289 | PAYNE, BRIAN | 0.2348% | 15,471.56 |
| 290 | SKAGGS, MICHAEL | 0.2366% | 15,588.89 |
| 291 | POLLINGER, JOHN | 0.2368% | 15,603.48 |
| 292 | NALL, DAVID | 0.2378% | 15,671.90 |
| 293 | FONSECA, LUIS | 0.2383% | 15,700.57 |
| 294 | BLASI, JERRE | 0.2403% | 15,835.12 |
| 295 | GEORGE, MARIO | 0.2407% | 15,862.14 |
| 296 | SCHOUEST, TODD | 0.2412% | 15,889.95 |
| 297 | CALDERON, ARTURO | 0.2418% | 15,929.73 |
| 298 | GALLAGHER, GREGORY | 0.2459% | 16,202.77 |
| 299 | GUILLEMET, KENNETH | 0.2474% | 16,303.78 |
| 300 | MICHAELS, AARON | 0.2500% | 16,475.14 |
| 301 | GARABITO, ELVIN | 0.2529% | 16,663.00 |
| 302 | BEZDEK, CASEY | 0.2563% | 16,886.07 |
| 303 | KENNEDY, PHILLIP | 0.2605% | 17,167.56 |
| 304 | REYES, EDDISON | 0.2613% | 17,216.65 |
| 305 | CERBAS, JESSIE | 0.2613% | 17,216.89 |
| 306 | LANGLEY, GARY | 0.2617% | 17,244.03 |
| 307 | LEJEUNE, SIDNEY | 0.2620% | 17,264.49 |
| 308 | FUENTES, ADOLPH | 0.2626% | 17,302.82 |
| 309 | GUILLERMO, FERDINAND | 0.2627% | 17,311.51 |
| 310 | SHAH, VEESHAL | 0.2719% | 17,916.74 |
| 311 | VELAZQUEZ, CLAY | 0.2732% | 18,001.58 |
| 312 | NELSON, DENNIS | 0.2807% | 18,493.25 |
| 313 | WIXOM, MICHAEL | 0.2817% | 18,561.52 |
| 314 | BELL SR, KIM | 0.2819% | 18,576.13 |
| 315 | ATWOOD, STEVEN | 0.2842% | 18,724.20 |
| 316 | FORD, TIMOTHY | 0.2850% | 18,777.70 |
| 317 | CAVALLINI, JOSEPH | 0.2922% | 19,254.15 |
| 318 | ESPIRITU, DANIEL | 0.2927% | 19,285.45 |
| 319 | SILVERNALE, NATHAN | 0.2943% | 19,393.91 |
| 320 | RADFORD, THOMAS | 0.2966% | 19,543.66 |

**148731 Adeva, Wencilio vs. Caleb, Brett**
**Payment Due Per Plaintiff**

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 321 | CASAS, ANASTACIO | 0.2996% | 19,740.74 |
| 322 | LONGORIA, UBENCE | 0.3019% | 19,891.35 |
| 323 | SENECA, RICHARD | 0.3040% | 20,033.78 |
| 324 | FRANKLIN, CHRISTOPHER | 0.3069% | 20,220.99 |
| 325 | MCADAMS, ROBERT | 0.3117% | 20,538.35 |
| 326 | OLKERS, DENVER | 0.3183% | 20,972.56 |
| 327 | JOHNSON, BRYAN | 0.3189% | 21,011.88 |
| 328 | TOCHE, LUIS | 0.3223% | 21,236.20 |
| 329 | MCCLEAN, KEITH | 0.3249% | 21,406.79 |
| 330 | IRVIN, JOHN | 0.3249% | 21,410.29 |
| 331 | HARMON, MIKE | 0.3288% | 21,662.71 |
| 332 | LAUER, EDWARD | 0.3327% | 21,921.97 |
| 333 | RUSH, JOHN | 0.3344% | 22,035.90 |
| 334 | O'NEIL, DANIEL | 0.3388% | 22,322.00 |
| 335 | HOOD, MICHAEL | 0.3406% | 22,442.40 |
| 336 | LEFEBVRE, DANIEL D. | 0.3429% | 22,594.70 |
| 337 | CANALES, MICHAEL | 0.3431% | 22,607.03 |
| 338 | ACCARDO, CHRISTOPHER | 0.3445% | 22,696.50 |
| 339 | WARD, GLENN | 0.3502% | 23,071.59 |
| 340 | GONZALEZ, STEPHEN | 0.3538% | 23,314.48 |
| 341 | STEPHENS, KEVIN | 0.3562% | 23,467.66 |
| 342 | RUBIO, ANTHONY | 0.3565% | 23,492.87 |
| 343 | TAGLE JR, DANIEL | 0.3636% | 23,958.15 |
| 344 | RENO, CASEY | 0.3699% | 24,375.83 |
| 345 | MATIAS JR, RICARIDO | 0.3702% | 24,391.70 |
| 346 | VUONG, TOMMY | 0.3782% | 24,921.70 |
| 347 | KENNEMER, JOSHUA | 0.3883% | 25,586.52 |
| 348 | JOHNSON, LYLE | 0.3949% | 26,018.26 |
| 349 | QUIN, JEFFREY | 0.3990% | 26,289.66 |
| 350 | VARA, JOSEPH | 0.4022% | 26,501.59 |
| 351 | GARRIDO, ALLAN | 0.4057% | 26,729.87 |
| 352 | PANCAKE, JOHNNY | 0.4079% | 26,877.34 |
| 353 | BENNETT, CHARLES | 0.4105% | 27,049.80 |
| 354 | HOLM, JAMES | 0.4122% | 27,159.87 |
| 355 | DEL ANGEL, CESAR | 0.4150% | 27,346.98 |
| 356 | TREVINO, ERNEST | 0.4172% | 27,489.79 |
| 357 | RUIZ, ROLAND | 0.4286% | 28,239.06 |
| 358 | HOOVER, JEREMY | 0.4318% | 28,453.91 |
| 359 | HAYNES, WILLIAM | 0.4543% | 29,931.09 |
| 360 | MARTINEZ, JOHN | 0.4563% | 30,068.96 |

## 148731 Adeva, Wencilio vs. Caleb, Brett
## Payment Due Per Plaintiff

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 361 | HALL, JAMES | 0.4567% | 30,090.47 |
| 362 | COX, RICHARD | 0.4585% | 30,208.77 |
| 363 | FERNANDEZ, JUAN | 0.4601% | 30,319.10 |
| 364 | CARLIN, JOSH | 0.4607% | 30,355.97 |
| 365 | SIMONET, MICHAEL | 0.4619% | 30,434.64 |
| 366 | STEWART, KEVIN | 0.4654% | 30,662.09 |
| 367 | ROPER, TORY | 0.4677% | 30,814.03 |
| 368 | PETERSEN, CURTIS | 0.4720% | 31,101.68 |
| 369 | CARY, PATRICK | 0.4755% | 31,330.42 |
| 370 | GONZALES, WILLIAM | 0.4840% | 31,890.59 |
| 371 | SINGH, BALRAJ | 0.4841% | 31,899.51 |
| 372 | VALENCIA, OCTAVIO | 0.4872% | 32,104.51 |
| 373 | KIRBY, WILLIAM | 0.4887% | 32,200.84 |
| 374 | OSBORNE, JEFFEREY | 0.4897% | 32,266.57 |
| 375 | RHODES, JOSEPH | 0.4904% | 32,314.14 |
| 376 | HELMS, THOMAS | 0.5010% | 33,008.46 |
| 377 | VAN WAGNER, JONATHAN | 0.5025% | 33,107.38 |
| 378 | ABATE, VICTOR | 0.5036% | 33,184.48 |
| 379 | JACKSON, BOBBY | 0.5039% | 33,201.48 |
| 380 | MOTIN, RUHUL | 0.5056% | 33,315.09 |
| 381 | BUI, DAVID | 0.5252% | 34,606.92 |
| 382 | FLANIGAN, BOBBY | 0.5352% | 35,264.58 |
| 383 | BRADLEY, JASON | 0.5357% | 35,296.66 |
| 384 | ANWAR, SOHAIL | 0.5383% | 35,468.24 |
| 385 | PALOMO, LOEL | 0.5387% | 35,493.04 |
| 386 | BOURGEOIS JR, DANIEL | 0.5477% | 36,085.29 |
| 387 | JEAN-PIERRE, WILHELM | 0.5581% | 36,770.28 |
| 388 | HODGE, EUSTACE | 0.5592% | 36,847.56 |
| 389 | NUNCIO, ROBERT | 0.5608% | 36,954.13 |
| 390 | HILTON, MARK | 0.5728% | 37,742.83 |
| 391 | DELGADO, IGNACIO | 0.5780% | 38,086.63 |
| 392 | CARDENAS, JOSE | 0.5807% | 38,261.70 |
| 393 | KALB, HENRY | 0.5844% | 38,508.56 |
| 394 | LYONS, STEVE | 0.6155% | 40,555.85 |
| 395 | GLASER, DAVID | 0.6209% | 40,908.81 |
| 396 | NGUYEN, QUAN | 0.6213% | 40,937.69 |
| 397 | MARTINEZ JR, DANIEL | 0.6236% | 41,091.38 |
| 398 | NIXON, JOSEPH | 0.6245% | 41,145.71 |
| 399 | KRAMER, JOSEPH | 0.6293% | 41,462.95 |
| 400 | BASTIAN, WILLIAM A | 0.6358% | 41,894.28 |

**148731 Adeva, Wencilio vs. Caleb, Brett**
**Payment Due Per Plaintiff**

| | NAME | OVERTIME DUE % | NET SETTLEMENT PROCEEDS DUE |
|---|---|---|---|
| 401 | HINDSLEY, JASON | 0.6509% | 42,888.74 |
| 402 | CAMPBELL, ROBERT | 0.6642% | 43,761.63 |
| 403 | LITTLE, DEAN | 0.6657% | 43,865.75 |
| 404 | MUSTILLO, ANTHONY | 0.6695% | 44,110.87 |
| 405 | LABITAN, PATRICK | 0.6839% | 45,061.63 |
| 406 | GENTRY, BENJAMIN | 0.6937% | 45,706.59 |
| 407 | PHILLIPS, NATHAN | 0.7107% | 46,828.84 |
| 408 | SERRANO, RUDOLFO | 0.7229% | 47,631.76 |
| 409 | GARABITO, JUAN | 0.7311% | 48,171.69 |
| 410 | ALBERT, LINCOLN | 0.7337% | 48,344.85 |
| 411 | BROMBEREK, WILLIAM | 0.7369% | 48,553.24 |
| 412 | ZECCA, PATRICK | 0.7397% | 48,742.19 |
| 413 | FRAUSTO, ISABEL | 0.7445% | 49,056.77 |
| 414 | ORBAN, DAVID | 0.7870% | 51,853.33 |
| 415 | NGUYEN, VU | 0.8388% | 55,269.85 |
| 416 | KELLER, THOMAS E | 0.8482% | 55,889.77 |
| 417 | COTAY, RAYMOND | 0.8615% | 56,762.35 |
| 418 | WHITELAW, JASON | 0.9107% | 60,007.37 |
| 419 | NUNEZ, BENJAMIN | 0.9154% | 60,314.48 |
| 420 | CHIFICI, PAUL | 0.9296% | 61,252.61 |
| 421 | MENDEZ, JOSE | 0.9649% | 63,575.89 |
| 422 | MAYORGA, ROBERTO | 1.0542% | 69,463.02 |
| 423 | MALSEED, DENNIS | 1.1161% | 73,539.15 |
| 424 | ANAYA, RUSSELL | 1.1268% | 74,245.94 |
| 425 | MYERS, JOHN | 1.1453% | 75,467.07 |
| 426 | WALLS JR, WILLIAM | 1.1860% | 78,144.79 |
| 427 | FERNANDEZ, ROMEO | 1.1911% | 78,485.04 |
| 428 | THORNTON, JAMES | 1.1971% | 78,876.07 |
| 429 | BARTON, BILLY | 1.2107% | 79,772.77 |
| 430 | FREITAS, THOMAS | 1.2191% | 80,328.48 |
| 431 | RAINES, JASON | 1.2196% | 80,359.08 |
| 432 | CARROLL, DAVID | 1.2586% | 82,930.85 |
| 433 | VALENCIA, EDIE | 1.4370% | 94,687.27 |
| 434 | GILLMAN, ROBERT | 1.5575% | 102,625.12 |
| 435 | SINGH, RAMANDEEP | 1.8500% | 121,893.71 |
| 436 | ADEVA, WENCILIO | 3.0552% | 201,305.29 |
| | **Grand Total** | 100.000000% | **$   6,593,400.00** |

# EXHIBIT B

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

```
------------------------------------------------
```

WENCILIO ADEVA, individually and on : HONORABLE STANLEY R. CHESLER
behalf of all other persons similarly situated, : CIVIL ACTION NO. 09-CV-01096-SRC-MAS
                                          :

                   Plaintiffs,          :

**v.**                                        :                      Civil Action

                                          :

INTERTEK USA INC. f/k/a CALEB : 
BRETT USA INC. and INTERTEK CALEB :          **Release of Claims**
BRETT, INC. a foreign corporation,      :

                                          :

                  Defendants.        :

```
------------------------------------------------
```

In consideration of the payment of the sum of $_____$ to $_____$

(referred to hereinafter as "Plaintiff"), the receipt and sufficiency of which is hereby

acknowledged, in settlement of the above-captioned matter, Plaintiff on behalf of himself and his

heirs, estate, executors, administrators, assigns, transferees and representatives hereby releases

and forever discharges Intertek USA, Inc. and its predecessors, successors, parents, subsidiaries,

affiliates, assigns, and all of their present and former directors, officers, employees, agents,

shareholders, and representatives (collectively "the Intertek Releasees"), from any and all claims,

causes of actions, demands, debts, obligations, damages or liability of any nature whatsoever,

known or unknown, which concern, or relate in any way to the payment of wages, commissions,

or any other form of compensation, and any and all claims for retaliation or interference of

rights, whether those claims exist, or allegedly exist, at law or in equity under the common law,

contract law, statutory law, the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq., and state

wage laws, including any and all derivative claims based upon the Employee Retirement Income

Security Act, 29 U.S.C. §§ 201, *et seq*  (collectively referred to as the "Released Claims"). The Released Claims are intended to include, but not be limited to, any and all claims that were raised, or could have been raised, in this Lawsuit and any and all claims for attorneys' fees, costs, expenses and the like, including but not limited to, any claims for attorneys' fees related to services rendered by Plaintiff's counsel of record in this matter and/or any other counsel who has provided services to the Plaintiff in connection with any claim for unpaid wages.

Notwithstanding the foregoing, Plaintiff does not hereby release any claims asserted in connection with any pending workers' compensation claims he may have involving Intertek USA, Inc., or any claims relating to employment discrimination or retaliation arising from Federal or state discrimination and/or whistleblower laws.

All parties hereto agree that that this release and the foregoing payment are not an admission of liability of any fact or matter by any party hereto.

Plaintiff acknowledges that he has discussed this release with his counsel, that he understands it, and that he is signing it of his own free will.

_____                 _____
                                          Witness

_____                 _____
Dated                                     Dated

9420139.1 (OGLETREE)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| WENCILIO ADEVA, individually and on behalf of all other persons similarly situated | : |
| | : |
| | : CASE NO.:2:09-cv-01096-SRC-MAS |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| INTERTEK USA INC. f/k/a CALEB BRETT USA INC. and INTERTEK CALEB BRETT, INC. | : |
| | : |
| | : |
| a foreign corporation, | : |
| | : |

## SUPPLEMENTAL MEMORANDUM OF LAW ADDRESSING COURT INQUIRIES ON PROVISIONS OF SETTLEMENT AGREEMENT

### INTRODUCTION

The Parties, by and through their undersigned counsel and pursuant to the Federal Rules of Civil Procedure and Local Rules, file the instant Memorandum of Law to address the specific inquiry raised by the Court at the hearing held on December 2, 2010, as to whether an opt-in collective action, brought exclusively under the FLSA, may be settled where: (1) a "common fund" is established; and (2) Plaintiffs' counsel receives a percentage of such "common fund" as compensation for its attorneys' fees and costs incurred in litigation of the matter.

As more fully discussed below, numerous courts around the country have permitted such common fund resolutions of "pure" FLSA collective action cases based upon the same methodology agreed to by the parties here. More importantly, however, in light of the fact that the Plaintiffs are receiving full compensation "without compromise" under the half-time or fluctuating work week payment plan provided by the FLSA, the parties respectfully submit that

court approval of attorneys' fees and costs is not required in the instant case under existing FLSA jurisprudence.

## LEGAL AUTHORITY

### A. Courts Throughout the Country Have Held That Pure FLSA Cases May e Resolved Be the Establishment of a "Common Fund," Whereby the Attorneys' Fees and Costs Are Calculated As a Percentage Of The Total "Common Fund."

In this case, the Parties' Settlement Agreement holds that the attorneys' fees and costs incurred by Plaintiffs' counsel, are to be paid as a percentage of the total "common fund." The methodology employed by the parties in settling this case, was based upon prior FLSA jurisprudence from courts around the country, which have agreed that "attorneys who create a common fund [in an FLSA case] are entitled to be compensated for their efforts from a reasonable percentage of that fund." *Stahl v. Mastec, Inc.*, 2008 WL 2267469, *1 (M.D. Fla. 2008).

In pure FLSA cases such as the instant one, courts have upheld the entitlement of attorneys' fees and costs to be paid from a "common fund." *See Burkholder v. City of Fort Wayne*, 2010 WL 4457310, at *5 (N.D. Ind. Sept. 21, 2010)(attorneys' fees comprising 33% of common fund in FLSA only case were reasonable and approved by the court); *Ayers v. SGS Control Services, Inc.*, 2009 WL 3765833, at *1 (2d. Circ. Nov. 19, 2009)(permitting percentage of common fund recovery for attorneys' fees and costs in FLSA only collective action); *Grassick v. Avatar Properties, Inc.*, 2008 WL 5099942, at *3 (M.D. Fla. Nov. 25, 2008)(same); *Lepinske v. Mercedes Homes, Inc.*, 2008 WL 2694111, at *4 (M.D. Fla. July 7, 2008)(approving percentage of common fund attorneys fee in pure FLSA collective, but basing fee on opt-in participation from notice to be sent out); *see also Moultry v. Cemex, Inc.*, 8:07-cv-453-T-MSS (M.D. Fla. Aug. 20, 2008) (percentage of common fund as attorneys' fees in FLSA case

2

approved); *see also Moysey v. Andrus*, 1980 WL 122, at * 13 (D.D.C. Apr. 18, 1980)(creating

common fund to resolve collective action ADEA claims and ordering that attorneys' fees and

costs shall be paid from the "common fund").

       As noted in the initial letter requesting approval of the settlement, the results achieved

and available for the class are exemplary.  The attorneys' fees and costs to be paid are consistent

with the material terms of the settlement agreement, the time and effort incurred by Plaintiffs'

counsel, and the result achieved. Thus, Plaintiffs respectfully request the Court's approval of the

settlement provided.

### B. Courts Within This Circuit Have Held That Purely Private Settlements of FLSA Claims Are Permissible Without Court Approval.

       As the Court noted in passing during the first hearing on the Letter Motion for Approval,

the need for court approval of an FLSA settlement is far from a settled issue. *See United States v.*

*Allegheny-Ludlum Indus. Inc.*, 517 F.2d 826, 861 (5th Cir.1975) (the Portal-to Portal Act permits

purely private compromises of FLSA claims), and *compare with Lynn's Food Stores, Inc. v.*

*United States*, 679 F.2d 1350, 1352-1353 (11th Cir.1982) (Section 216(c) establishes the

exclusive process for compromising FLSA claims); *and Walton v. United Consumers Club, Inc.*,

786 F.2d 303 (7th Cir.1986) (same).

       Although the Third Circuit has not affirmatively decided the issue one way or another as

of yet, at least some district courts in this Circuit have noted that court approval of private FLSA

claims may not be necessary. *See Burke v. Wackenhut Corp.*, 2007 WL 694302, at *2 (M.D. Pa.

Mar. 5, 2007)("in dicta, the Third Circuit has indicated that [wage] disputes may be settled

privately, without court approval.") *citing Coventry v. United States Steel Corp.*, 856 F.2d 514,

521 n. 8 (3d Cir.1988) (observing that a release of an employee's rights under FLSA is invalid,

but the release of a claim grounded in a factual dispute might not be precluded); *Watkins v.*

3

*Hudson Coal Co.*, 151 F.2d 311, 314 (3d Cir. 1945) (private settlement of a dispute over the

amount of wages due an employee "may, under proper circumstances, be upheld"); *see also*

*Lignore v. Hospital of University of Pennsylvania*, 2007 WL 1300733, fn 16 (E.D. Pa. May 1,

2007); *Morris v. The Penn Mutual Life Ins. Company and the Indepro Group*, 1989 U .S. Dist.

LEXIS 1690, at *12-14 (E.D.Pa. Feb. 21, 1989)(finding that purely private compromises under

the FLSA are available where an employee is "not a member of that segment of the workforce

needing protection from sub-standard wages and excessive hours.").

To be clear, the parties have no concern with this Court reviewing the settlement

agreement for fairness.  To the extent this review, however, is an impediment to the "just,

speedy, and inexpensive determination" of this action as called for in Rule 1 of the Federal Rules

of Civil Procedure, the parties simply notify this Court of the foregoing authority.

### C. Since Plaintiffs Are Receiving 100% Relief of their Damages Sought Under the Fluctuating Work Week Methodology, the Court Need Not Scrutinize Plaintiffs' Attorneys' Fees and Costs In Approving the Settlement As Fair.

In the instant case, this Court has previously held that the applicable statute of limitations

for Plaintiffs' claims is two (2) years.  *See* D.E. 179.  Further, this Court determined that

although Defendants violated the FLSA, by virtue of the manner in which they compensated

Plaintiffs for their overtime, Defendants' FLSA violations were committed in "good faith," such

that Plaintiffs are/were not entitled to an award of liquidated damages, in addition to any unpaid

wages that may be due them. *See id.*

While the issue of how Plaintiffs damages are to be calculated where, as here, the

Defendants attempt to utilize the fluctuating work week methodology, but fail to conform with

same, one method for calculating the damages is by correctly reapplying the fluctuating work

week, to recalculate the appropriate overtime that *should* have been paid (and offsetting same by

amounts of overtime already paid). Utilizing this measure of damages for settlement purposes, the Plaintiffs are receiving in excess of the amounts they could be owed under the FLSA and this Court's rulings, and their claims have not been "compromised."

Thus, inasmuch as Plaintiffs are receiving their full damages (or more) without compromise, by virtue of the settlement in this case, this Court need not scrutinize and/or approve Plaintiffs' attorneys' fees and costs based upon existing FLSA precedent. *See McGaw v. Icebar Orlando, LLC*, 2010 WL 4005753, at *2 (M.D. Fla. Oct. 6, 2010)(not scrutinizing attorneys' fees and costs where the plaintiff received full relief without compromise); *see also Foss v. Tri-Pod Aluminum, Inc.*, 2010 WL 963917, at *2 (M.D. Fla. March 15, 2010) (same); *Head v. V & L Services III, Inc.*, 2009 WL 3582133, at *3 (M.D. Fla. Oct. 27, 2009)("Plaintiffs have not compromised their FLSA claims. Accordingly, I find the settlements as to Head and the opt-in Plaintiffs are necessarily a 'fair and reasonable resolution of a bona fide dispute over FLSA provisions.'"); *Tata v. CVS Caremark Corp.*, 2009 WL 1457745 (M.D.Fla. May 26, 2009) (same); *Granger v. Water Sports Management, Inc.*, 2009 WL 1396286, at *2 (M.D. Fla. May 18, 2009) (Because settlement included full damages owed to FLSA plaintiff, the court need not scrutinize the settlement further to consider whether the payment counsel was fair.").

In short, the parties agree that the amount to be paid to Plaintiffs' counsel for the significant time and expense incurred, and the results achieved for their clients, is reasonable under the circumstances. *See* Settlement Agreement generally. The resolution of the amount to be paid for attorneys' fees and costs was properly compromised and negotiated pursuant to the Supreme Court's directive in *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983). Although likely not required as noted above, the parties submitted their settlement agreement to this Court for approval of the amounts to be paid to the plaintiffs pursuant to *Lynn's Food Stores, Inc.*, 679

5

F.2d at 1354. The inquiry addressed in *Lynn's Food Stores* ultimately directs courts to decide

whether the settlement represents a fair "compromise" of the back pay and liquidated damages

for the plaintiffs in order to prevent employees from waiving their rights to overtime

compensation. Here, there was no "compromise" as the Plaintiffs received in excess of their full

wages due under the fluctuating workweek analysis. Thus, there can be no real dispute that the

Plaintiffs' settlement amounts are fair, that their interests were protected, and that they secured

an excellent result for their "day in court." As such, to the extent this Court analyses the

settlement agreement for fairness, the parties respectfully submit that the settlement agreement is

due to be approved as a fair and reasonable resolution of the parties' dispute in this case.

## CONCLUSION

For all the aforementioned reasons, and for the reasons previously presented in the Letter

Motion to Approve, the Court should approve the parties' settlement as fair and reasonable, and

allow payment of such proceeds to the settlement class to issue.

December 7, 2010.

/s/ **ANDREW FRISCH**
Andrew R. Frisch, Esq.
Morgan & Morgan, P.A.
6824 Griffin Road
Davie, FL 33314
Telephone:     (954) 318-0268
Facsimile:     (954) 333-3515
Email: afrisch@forthepeople.com

*Attorney for Plaintiffs*

12/08/2010  16:24      9543333515                    MORGAN & MORGAN                                    PAGE  08/08

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served upon

Defendants on this 8th day of December, 2010, by sending same using first-class mail to:

Peter Hughes
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
10 Madison Ave # 402
Morristown, NJ 07960-7322

**/s/ ANDREW FRISCH**
Andrew R. Frisch